Gary **HARRISON**, Appellant,

v.

**STATE** of Alaska, Appellee.

No. A–2964.

Court of Appeals of Alaska.

April 27, 1990.

**360**

Blair McCune, Asst. Public Defender, and John B. Salemi, Public Defender, Anchorage, for appellant.

James L. Hanley, Dist. Atty., Kenai, and Douglas B. Baily, Atty. Gen., Juneau, for appellee.

Before BRYNER, C.J., and COATS and SINGLETON, JJ.

## OPINION

SINGLETON, Judge.

■■■■ Gary Harrison pled no contest and was convicted of driving without evidence of automobile registration, in violation of AS 28.10.461, and failure to carry and exhibit a driver's license on demand, in violation of AS 28.15.131. These violations are misdemeanors punishable by a fine of not more than $500 and imprisonment for not more than ninety days. AS 28.40.050. *Epperly v. State,* 648 P.2d 609 (Alaska App.1982). Harrison was fined $50 for each of his convictions. By pleading no contest, Harrison reserved the right to appeal the denial of his motion to dismiss.[1]

---

1. A conditional plea of no contest reserving certain issues for appeal is not appropriate unless the issues reserved, if resolved in favor of the defendant, would be dispositive of the case. *See Heuga v. State,* 609 P.2d 547 (Alaska 1980); *Cronin v. Anchorage,* 635 P.2d 840 (Alaska App. 1981). Harrison's plea apparently reserves the issue that Judge Hornaday erred in concluding that *Native Village of Stevens v. Alaska Management and Planning,* 757 P.2d 32 (Alaska 1988) was controlling in this case. In *Native Village of Stevens,* the supreme court held that Alaskan Native villages do not possess rights of self-government. This holding is arguably dispositive of Harrison's claim that Chickaloon village had the right of self-government, including the right to issue licenses and register vehicles. It is not clear, however, that a decision that *Native Village of Stevens* was not controlling would necessarily result in a decision disposing of the case in Harrison's favor. It does not appear that the state stipulated that, but for the *Native Village of Stevens* decision, Chickaloon village would be a self-governing tribe authorized to issue drivers' licenses and register vehicles. Even if some Alaskan Native villages have the right to self-government, there are still a number of complicated factual questions that would have to be determined before Chickaloon village could be found to be a self-governing tribe, so that Harrison would be entitled to judgment in

his favor. *See id.* at 43–50 (Rabinowitz, C.J., dissenting); *Board of Equalization v. Alaska Native Brotherhood,* 666 P.2d 1015, 1023–26 (Alaska 1983) (Rabinowitz, J., concurring). As Justice Rabinowitz points out, a Native entity asserting sovereignty and by extension Native self-government, shoulders the burden of proving it is a tribe. *See Mashpee Tribe v. New Seabury Corp.,* 592 F.2d 575, 586–87 n. 6, 589 (1st Cir. 1979), *cert. denied,* 444 U.S. 866, 100 S.Ct. 138, 62 L.Ed.2d 90 (1979), *quoted in Board of Equalization,* 666 P.2d at 1023.

It is not clear that Harrison has proved that the Native village of Chickaloon qualifies as a tribe under the standards articulated by Justice Rabinowitz and the federal cases upon which Justice Rabinowitz relies. Even if Chickaloon village were found to be self-governing, it is not clear that the right to issue drivers' licenses and register vehicles would be among its powers. While federal courts have found Indian tribes that were not in reservations to be self-governing, no court has held that a tribe outside a reservation was empowered to license drivers and register vehicles. Nevertheless, given the definitive treatment of Native village self-government by the majority in *Native Village of Stevens,* we do not think that the parties should be put to any further expense in this case and therefore have elected to resolve the issue presented. *See Uptegraft v. State,* 621 P.2d 5, 7

*See Oveson v. Anchorage,* 574 P.2d 801, 803 n. 4 (Alaska 1978); *Cooksey v. State,* 524 P.2d 1251 (Alaska 1974). Harrison argues that he is immune from prosecution under state vehicle registration and drivers' licensing statutes because he is an enrolled member of the Chickaloon village tribe and possesses a valid automobile registration and a valid driver's license issued by the tribe. The state does not contest the fact that Chickaloon village issued a driver's license to Harrison, registered his vehicle, and issued license plates to it. In Harrison's view, the state is obligated to grant reciprocity to tribal drivers' licenses and tribal vehicle registrations throughout the state in return for the tribe's recognition of state drivers' licenses and vehicle registrations in Indian country.[2]

Harrison is an Athabascan Indian of the Caribou clan. He is an enrolled member of Chickaloon village and an officer of the village council. Chickaloon village is located north of Palmer near Sutton. Harrison testified that the village was formally organized and recognized by the federal government and a constitution was adopted in 1974. The tribe now has approximately 150 people enrolled. The village council has adopted a constitution and bylaws based on models developed by a tribe in Wisconsin. Many enrolled members of the village do not reside in the village. The village council issues drivers' licenses and license plates to members of the tribe who

want them regardless of where they reside. The village ordered twenty-five sets of license plates, but only three people have put them on their cars.

On June 16, 1987, Harrison was stopped while driving at approximately mile seven of the Spur Highway, the main state highway between Kenai and Soldotna, Alaska. Kenai and Soldotna are more than two hundred miles south of Chickaloon village on the highway. Harrison was stopped a second time on August 5, 1987, on Beaver Loop Road, a state highway between Kenai and Soldotna. Both times he was stopped, Harrison was driving his private vehicle and not a vehicle owned by Chickaloon village. Harrison does not argue that he was engaged in village business at the time he was stopped. Harrison concedes that at the time he was stopped, his vehicle was not registered with the state and that he did not have a current, valid, state driver's license.

## DISCUSSION

■ Harrison argues that Chickaloon village is an Indian tribe which is sovereign in the sense that it possesses the right to self-government, independent of the state, but limited by federal law. *See United States v. Wheeler,* 435 U.S. 313, 98 S.Ct. 1079, 55 L.Ed.2d 303 (1978); *Worcester v. Georgia,* 31 U.S. (6 Pet.) 515, 8 L.Ed. 483 (1832).[3] In the court below, Harrison relied

n. 3 (Alaska 1980) (honoring a *Cooksey* plea despite doubts that the issue reserved was dispositive).

2. Generally, a tribe's power to exercise self-government extends within its share of Indian country. *See* F.S. Cohen *Handbook of Federal Indian Law* 27–47, 259 (1982). Title 18 U.S.C. § 1151 (1988) defines "Indian country" as including:

(a) all land within the limits of any Indian reservation under the jurisdiction of the United States Government, notwithstanding the issuance of any patent, and, including rights-of-way running through each reservation, (b) all dependent Indian communities within the borders of the United States whether within the original or subsequently acquired territory thereof, and whether within or without the limits of a state, and (c) all Indian allotments, the Indian titles to which have not been extinguished, including rights-of-way running through the same.

It is not contended that Chickaloon village is "within the limits of any Indian reservation" nor does it appear to be contended that Chickaloon village is made up of Indian allotments, the Indian titles to which have not been extinguished. Consequently, if there is any "Indian country" applicable to Chickaloon village, it must be because Chickaloon village is a "dependent Indian community." The record does not reflect that there are any roads or highways in the vicinity of Chickaloon village that belong to Chickaloon village and therefore could be used as a factor to show that Chickaloon village qualified as a "dependent Indian community." All the roads and highways belong to the state.

3. There is a suggestion in the record that Harrison denies that Chickaloon village's right of tribal self-government is dependent on federal law. He seems to have argued that the United States derives its right to govern Chickaloon village from a treaty with Russia and that Rus-

upon 25 U.S.C. § 1301(1) (1988) which defines Indian tribe as "any tribe, band or other group of Indians subject to the jurisdiction of the United States recognized as possessing powers of self-government," and, upon 25 U.S.C. § 1301(2) (1988) which defines powers of self-government to include: "[A]ll governmental powers possessed by an Indian tribe, executive, legislative, and judicial, and all offices, bodies and tribunals by and through which they are executed, including courts of Indian offenses."

In Harrison's view, the power to license vehicles and drivers is a power of self-government possessed by his tribe.[4] Generally, where an individual Indian goes beyond the boundary of the Indian country associated with his tribe, a nondiscriminatory state law may be made applicable to him absent express federal law to the contrary. *See Mescalero Apache Tribe v. Jones,* 411 U.S. 145, 148–49, 93 S.Ct. 1267, 1270–1271, 36 L.Ed.2d 114 (1973). Harrison argues, however, that Alaska is constitutionally required to grant reciprocity to Chickaloon village licenses. He relies on *Queets Band of Indians v. Washington,* 765 F.2d 1399 (9th Cir.1985), *vacated,* 783 F.2d 154 (9th Cir.1986)[5] and *Red Lake Band of Chippewa Indians v. State,* 311 Minn. 241, 248 N.W.2d 722 (1976).

Both of these cases involve Indian tribes living on Indian reservations. In each case, the court assumed that the tribe had undisputed power to license vehicles on the reservation. The only question involved the state's obligation to recognize those licenses when the vehicles were driven off the reservation. *Queets,* 765 F.2d at 1406–07; *Red Lake,* 248 N.W.2d at 726–29. In each case, the court held that the state was obligated to recognize tribal vehicle registrations.

Chickaloon village is not an Indian reservation. The Alaska Supreme Court has held that most Native groups in Alaska are not self-governing or sovereign. *Native Village of Stevens,* 757 P.2d at 34. The only apparent exceptions to a general rule denying Native villages sovereign, self-governing power which the Alaska Supreme Court is prepared to recognize are the Metlakatla Indian Community on Annette Island, *see id.* at 35; *Atkinson v. Haldane,* 569 P.2d 151 (Alaska 1977), and the community of Tyonek. *See Native Village of Stevens,* 757 P.2d at 35–36 n. 4; *Ollestead*

---

sia never had sovereignty over Chickaloon village. Whatever claims Russia may have had, we are satisfied that Chickaloon village is a part of the United States, within its boundaries, and subject to its laws. *See Oliphant v. Suquamish Indian Tribe,* 435 U.S. 191, 208, 98 S.Ct. 1011, 1020, 55 L.Ed.2d 209 (1978) (holding that tribal self-government is subject to federal law).

**4.** Our jurisdiction is limited to appeals from criminal prosecutions and related matters. AS 22.07.020. State law is generally not applicable to Indian affairs within the territory of an Indian tribe absent the consent of Congress. Cohen, *supra* at 259. In Public Law 280, Congress granted the State of Alaska broad civil and criminal jurisdiction within "Indian country." *See* 67 Stat. 588 (1953); 18 U.S.C. § 1162 (1988); 28 U.S.C. § 1360 (1988); *Harrison v. State,* 784 P.2d 681 (Alaska App.1989).

Harrison was convicted of offenses that carried criminal penalties. The United States Supreme Court has cautioned, however, that Public Law 280 does not give the states jurisdiction over civil regulatory matters affecting Native people in Indian country merely because the regulatory statutes bear criminal penalties. *See California v. Cabazon Board of Mission Indians,* 480 U.S. 202, 107 S.Ct. 1083, 94 L.Ed.2d 244

(1987); *Bryan v. Itasca County, Minnesota,* 426 U.S. 373, 96 S.Ct. 2102, 48 L.Ed.2d 710 (1976). In *Cabazon,* 480 U.S. at 208–10, 107 S.Ct. at 1087–1088, the Supreme Court differentiated statutes carrying a criminal penalty which were enacted to prohibit criminal conduct and statutes carrying a criminal penalty which were enacted to regulate an activity. Only the former are within the jurisdictional grant in 18 U.S.C. § 1162. Alaskan statutes which govern ownership and operation of motor vehicles are regulatory. Consequently, the statutes violated by Harrison are not within the grant of criminal jurisdiction contained in 18 U.S.C. § 1162.

**5.** *Queets* is of limited authority for two reasons. First, it was vacated at the parties' request in light of anticipatory statutory changes and therefore is questionable as precedent. *See Department of Public Safety v. Gates,* 350 N.W.2d 59, 61 (S.D.1984). And, second, it applied only to vehicles owned by the tribe, not to the state's authority to require reservation Indians to register and license their vehicles when traveling beyond the reservation's borders. *Queets,* 765 F.2d at 1407–08. Harrison was not driving a vehicle owned by the tribe, nor was he engaged in tribal business at the time he was cited for the offenses in this case.

*v. Native Village of Tyonek,* 560 P.2d 31, 33 (Alaska 1977), *cert. denied,* 434 U.S. 938, 98 S.Ct. 426, 54 L.Ed.2d 297 (1977).

We view the issues of Native sovereignty and self-government in Alaska to be particularly complex. *See Alaska v. Native Village of Venetie,* 856 F.2d 1384, 1387 (9th Cir.1988); T. Berger, *Village Journey* (1985); D.F. Case, *Alaska Natives and American Laws* (1984); and Cohen, *supra. Cf. Price v. Hawaii,* 764 F.2d 623, 626 (9th Cir.1985), *cert. denied,* 474 U.S. 1055, 106 S.Ct. 793, 88 L.Ed.2d 771 (1986), *reh'g denied,* 475 U.S. 1091, 106 S.Ct. 1482, 89 L.Ed.2d 736 (1986); *Bottomly v. Passamaquoddy Tribe,* 599 F.2d 1061, 1065–66 (1st Cir.1979); *Joint Tribal Council of the Passamaquoddy Tribe v. Morton,* 528 F.2d 370 (1st Cir.1975), (All three cases discuss factors to be considered in determining whether a group is a tribe.) However, we are bound to follow decisions of the Alaska Supreme Court. In the absence of some evidence that Chickaloon village has been recognized as a self-governing tribe by the federal government, we are compelled to hold that it lacks the authority to register vehicles or license drivers. Consequently, the state is not required to recognize licenses and registrations Chickaloon village purports to issue.

Harrison recognizes that *Native Village of Stevens* is fatal to his case. He argues, however, the questions of whether a group of Natives is a tribe, the extent of tribal sovereignty, and the scope of tribal self-government are questions of federal law, not state law. We agree. *See Chilkat Indian Village v. Johnson,* 870 F.2d 1469, 1474 (9th Cir.1989). Consequently, Harrison argues that federal cases decided subsequent to *Native Village of Stevens* must be consulted in order to determine whether the Alaska Supreme Court accurately interpreted federal law. There are no United States Supreme Court decisions discussing Native village self-government in Alaska.[6] In the absence of a controlling decision by the United States Supreme Court, it would appear that this court would be bound to follow a decision of the Alaska Supreme Court on an issue of federal law despite conflicting lower federal court decisions. *State v. Dwyer,* 332 So.2d 333, 335 (Fla.1976).[7]

Harrison appears to rely on *Native Village of Noatak v. Hoffman,* 872 F.2d 1384, 1387 (9th Cir.1988), *reh'g denied.,* 896 F.2d 1157 (9th Cir.1990), in which the Ninth Circuit appeared to recognize tribes organized pursuant to 25 U.S.C. § 476 and those mentioned by Congress in the Alaska Native Claims Settlement Act, 43 U.S.C. § 1610(b)(1), as having the authority to sue in federal court pursuant to 28 U.S.C. § 1362. Even if we were to assume, as Harrison apparently argues, that authority to sue in federal court identifies a tribe as having the power of self-government, an issue we do not decide, it would not help Harrison because Chickaloon village is not

---

6. *But see Metlakatla Indian Community, Annette Island Reserves v. Egan,* 369 U.S. 45, 82 S.Ct. 552, 7 L.Ed.2d 562 (1962); *Organized Village of Kake v. Egan,* 369 U.S. 60, 82 S.Ct. 562, 7 L.Ed.2d 573 (1962). In these companion cases, the United States Supreme Court held that the Alaska Statehood Act's disclaimer of any right to and retention in the United States of absolute jurisdiction over lands and property, including fishing rights, held by Indians, did not authorize the Secretary of the Interior to promulgate regulations allowing the Indian communities of Kake and Angoon to use fish-traps in Alaskan waters in violation of Alaska anti-fish-trap conservation law, but did allow the secretary to promulgate regulations allowing the Metlakatlans to do so. This secretarial power was based on an 1891 act of Congress setting apart a reservation for the Metlakatlans.

7. Where a federal question is involved, the courts of Alaska are not bound by the decisions of a federal court other than the United States Supreme Court. *United States v. Woods,* 432 F.2d 1072, 1075–76 (7th Cir.1970), *cert. denied,* 402 U.S. 983, 91 S.Ct. 1658, 29 L.Ed.2d 148 (1971); *Owsley v. Peyton,* 352 F.2d 804, 805 (4th Cir.1965); *Cooper v. Morin,* 91 Misc.2d 302, 398 N.Y.S.2d 36, 53 (N.Y.Sup.Ct.1977); *Robertson Lumber Co. v. Progressive Contractors, Inc.,* 160 N.W.2d 61, 69 (N.D.1968). The converse is also true; federal courts in Alaska are not bound by decisions of Alaska state courts on questions of federal law. *Joint Tribal Council of the Passamaquoddy Tribe,* 528 F.2d at 380.

**364**

organized pursuant to 25 U.S.C. § 476 and is not mentioned in 43 U.S.C. § 1610(b)(1).

The judgment of the district court is AFFIRMED.[8]

---

**8.** In the court below, Harrison also relied on the following legislation which, in his view, constituted federal recognition of Chickaloon village's right to Indian self-government: (1) Indian Financing Act of 1974, 25 U.S.C. §§ 1451–1543; (2) Indian Self–Determination and Education Assistance Act, 25 U.S.C. §§ 450–450n, 455–458e; (3) Indian Health Care Improvement Act, 25 U.S.C. §§ 1601–1680; and (4) Indian Child Welfare Act of 1978, 25 U.S.C. §§ 1901–1963.

Harrison further pointed out that Chickaloon village is specifically listed as an Indian tribal entity which exercises governmental functions for purposes of certain tax exemptions under the Indian Tribal Government Tax Status Act of 1982, 26 U.S.C. § 7871; Chickaloon village is listed in the *Federal Register* as a Native entity eligible to receive services from the United States Bureau of Indian Affairs; Chickaloon village is listed as a federally recognized tribe in a directory of Alaska Tribal Entities, promulgated by the United States Bureau of Indian Affairs, Juneau Area Office, on December 29, 1986; and in 1981, Chickaloon village applied for and received money in accordance with the state revenue sharing plan under former AS 29.89.050.

However, the fact that Chickaloon village may qualify as a tribal entity for the specific purposes enumerated in these provisions does not necessarily entitle the village to recognition as a tribe for purposes of sovereignty and self-government. Whether a given group qualifies as a tribe depends on the context in which the question arises. A group of Indians may be a tribe for purposes of some federal statutes but not for others. *See* Cohen, *supra* at 363. In our view, the provisions cited by Harrison do not address the issue of tribal recognition for purposes of sovereignty. Again, our research reveals that there is no evidence that Chickaloon village has been recognized as a self-governing tribe by the federal government.