843 P.2d 1214 (1992)
In the Matter of F.P., W.M. and A.M.,
Minor Children Under the Age of Eighteen (18) Years.
No. S-4742.
Supreme Court of Alaska.
December 18, 1992.
*1215 Michael J. Walleri & Lee D. Goodman, Jr., Tanana Chiefs Conference, Fairbanks, for appellant Native Village of Circle.
D. Rebecca Snow, Asst. Atty. Gen., Fairbanks, Charles E. Cole, Atty. Gen., Juneau, for appellee State of Alaska.
Before RABINOWITZ, C.J., and BURKE, MATTHEWS, COMPTON and MOORE, JJ.

OPINION
PER CURIAM.
In March 1991 the Alaska Department of Health and Social Services took emergency custody of F.P., W.M. and A.M. The Department filed a petition for temporary custody. The Native Village of Circle intervened and moved to dismiss the superior court proceeding, claiming exclusive jurisdiction over the custody matter. The superior court denied the motion to dismiss. We affirm.
Circle is without jurisdiction in this child custody dispute. This case is controlled by Native Village of Nenana v. Department of Health & Social Services, 722 P.2d 219 (Alaska 1986), cert. denied, 479 U.S. 1008, 107 S.Ct. 649, 93 L.Ed.2d 704 (1986), and In re K.E., 744 P.2d 1173 (Alaska 1987). Circle asks that we review our holdings in these cases in light of recent opinions of the United States Court of Appeals for the Ninth Circuit, especially Native Village of Venetie I.R.A. Council v. Alaska, 944 F.2d 548 (9th Cir.1991).
The decision in Native Village of Venetie fails to persuade us that our prior cases should be overruled.[1] In concluding that the villages of Venetie and Fort Yukon had concurrent jurisdiction in child custody matters, the Venetie court held that these villages could be considered "sovereign," and therefore entitled to "the same rights and responsibilities as [] sovereign bands of native Americans in the continental United States," if they were "modern day successors to sovereign historical bands of natives." Id. at 559. This opinion is contrary to Native Village of Stevens v. Alaska Management & Planning, 757 P.2d 32 (Alaska 1988), where we concluded that "the history of the relationship between the federal government and Alaska Natives ... indicates that Congress intended that most Alaska Native groups not be treated as sovereigns." Id. at 34.
Under 25 U.S.C. § 1918(a) (1988), any Alaskan Native group seeking to "reassume" jurisdiction over child custody matters must first petition the Secretary of the Interior for approval.[2] The Ninth Circuit recognized this in Venetie. Venetie, 944 F.2d at 555. Nevertheless, it concluded that neither the Indian Child Welfare Act (25 U.S.C. §§ 1901-63 (1988)) nor Public Law 280 prevents Alaskan Native groups from exercising concurrent jurisdiction over child custody matters. Id. at 562.
We reached an opposite conclusion in Native Village of Nenana:
Our reading of 25 U.S.C. § 1918(a) indicates that Congress intended that Public Law 280 give certain states, including Alaska, exclusive jurisdiction over matters involving the custody of Indian children, and that those states exercise such jurisdiction until a particular tribe petitions *1216 to reassume jurisdiction over such matters, and the Secretary of the Interior approves [the] tribe's petition.
Native Village of Nenana, 722 P.2d at 221. Our analysis of the issue need not be repeated here. See id. at 221-22; see also In re K.E., 744 P.2d at 1174. We remain convinced that our interpretation of § 1918(a) is correct. Nothing in Native Village of Venetie persuades us to change our opinion.
Since Circle has not successfully petitioned the Secretary of the Interior to reassume jurisdiction pursuant to 25 U.S.C. § 1918(a), it has no jurisdiction to decide child custody matters. The superior court therefore correctly denied Circle's motion to dismiss.[3]
AFFIRMED.
RABINOWITZ, C.J., dissents.
RABINOWITZ, Chief Justice, dissenting.
I dissent from this court's affirmance of the superior court's denial of Native Village of Circle's motion to dismiss the state's motion for temporary custody. The rationale for the court's opinion is that the superior court's ruling should be affirmed because Circle lacks jurisdiction to decide child custody matters since it has not as yet successfully petitioned the Secretary of Interior to reassume jurisdiction over child custody matters pursuant to 25 U.S.C. § 1918(a).
Unlike the majority I am persuaded by the Ninth Circuit's analysis in Native Village of Venetie I.R.A. Council v. Alaska, 944 F.2d 548 (9th Cir.1991) that our decisions in Native Village of Nenana v. Department of Health & Social Services, 722 P.2d 219 (Alaska 1986), cert. denied, 479 U.S. 1008, 107 S.Ct. 649, 93 L.Ed.2d 704 (1986) and In re K.E., 744 P.2d 1173 (Alaska 1987) were incorrectly decided and should be overruled. It follows that I cannot join the majority in its reliance upon Native Village of Stevens v. Alaska Management & Planning, 757 P.2d 32 (Alaska 1988) in support of its rejection of the Ninth Circuit's Venetie opinion. In brief, I adhere to the views I expressed in my dissent in Native Village of Stevens.
With the passage of the Indian Child Welfare Act (ICWA), Congress implemented the policy of promoting tribal integrity by establishing various procedural and substantive protections to govern Indian child custody matters.[1] "Significantly, the declaration of the Act's legislative purpose includes both the protection of `the best interests of Indian children' and the promotion of `the stability and security of Indian tribes and families.'"[2]
*1217 To accomplish the federal policy of promoting tribal integrity by stopping the "wholesale separation of Indian children from their families,"[3] ICWA mandates specific jurisdictional rules[4] and further mandates that federal, state, and tribal governments:
[G]ive full faith and credit to the public acts, records, and judicial proceedings of any Indian tribe applicable to Indian child custody proceedings to the same extent that such entities give full faith and credit to the public acts, records, and judicial proceedings of any other entity.
25 U.S.C. § 1911(d) (1988).
Alaska Native villages are recognized by Congress as "Indian tribes" for purposes of the ICWA. See 25 U.S.C. § 1903(8).[5] This court has previously acknowledged the role of Alaskan tribal courts in Indian child custody matters. See In re J.M., 718 P.2d 150 (Alaska 1986) (Village council operated under the code or custom of an "Indian tribe" and, under the ICWA, was vested with exclusive jurisdiction as a "tribal court" over matter of custody of Indian child and, in absence of a waiver, was not precluded from claiming same in proceedings in state court to place child in foster care and terminate natural mother's parental rights.).
Tribes have jurisdiction over their members by virtue of their inherent sovereignty. See Montana v. United States, 450 U.S. 544, 564, 101 S.Ct. 1245, 1257-58, 67 L.Ed.2d 493 (1981) ("[T]he Indian tribes retain their inherent power to determine tribal membership, to regulate domestic relations among members, and to prescribe rules of inheritance for members."); see also Duro v. Reina, 495 U.S. 676, 685-86, 110 S.Ct. 2053, 2060, 109 L.Ed.2d 693 (1990) ("the retained sovereignty of the tribes is that needed to control their own internal relations, and to preserve their own unique customs and social order [and] ... to prescribe and enforce rules of conduct for [their] own members."). A tribe's sovereign authority, moreover, is presumed until Congress affirmatively acts to take such authority away. Native Village of Venetie, 944 F.2d at 556; see also United States v. Wheeler, 435 U.S. 313, 323, 98 S.Ct. 1079, 1086, 55 L.Ed.2d 303 (1978) ("[U]ntil Congress acts, the tribes retain their existing sovereign powers.").
Given these principles, in my view it is inconsistent with the doctrine of inherent tribal sovereignty to conclude that § 1918[6] *1218 of the ICWA and Public Law 280, taken together, divest tribes of even concurrent jurisdiction over child custody matters. Such a conclusion can only be reached if Public Law 280 is interpreted as a divestiture statute.
It is on this point that I find Judge O'Scannlain's analysis in Native Village of Venetie persuasive. There Judge O'Scannlain wrote:
The Supreme Court has also adopted the view that Public Law 280 is not a divestiture statute. See [California v.] Cabazon Band of Mission Indians, 480 U.S. [202] at 207-12, 107 S.Ct. [1083] at 1087-90 [94 L.Ed.2d 244]; Bryan [v. Itasca County, Minnesota], 426 U.S. [373] at 383-90, 96 S.Ct. [2102] at 2108-12 [48 L.Ed.2d 710]; see also Walker v. Rushing, 898 F.2d 672, 675 (8th Cir.1990) ("Public Law 280 did not itself divest Indian tribes of their sovereign power to punish their own members for violations of tribal law. Nothing in the wording of Public Law 280 or its legislative history precludes concurrent jurisdiction."). In Bryan, the Court observed that "nothing in [Public Law 280's] legislative history remotely suggests that Congress meant the Act's extension of civil jurisdiction to the States should result in the undermining or destruction of such tribal governments as did exist and a conversion of the affected tribes into little more than `private voluntary organizations.'" 426 U.S. at 388, 96 S.Ct. at 2111 (quoting United States v. Mazurie, 419 U.S. 544, 557, 95 S.Ct. 710, 717, 42 L.Ed.2d 706 (1975)). The Court has rejected all interpretations of Public Law 280 which would result in an undermining or destruction of tribal governments.
....
Finally, we note that Congress was aware, while drafting the Indian Child Welfare Act, that the U.S. Department of Justice viewed Public Law 280 as providing for concurrent jurisdiction among state and tribal courts. Then-Assistant Attorney General for Legislative Affairs Patricia M. Wald wrote to Interior and Insular Affairs Committee Chairman Morris K. Udall: "As you may be aware, the courts have consistently recognized that tribal governments have exclusive jurisdiction over the domestic relationships of tribal members located on reservations, unless a State has assumed concurrent jurisdiction pursuant to Federal legislation such as Public Law 83-280." Letter from Assistant Attorney General Patricia M. Wald to Hon. Morris K. Udall (Feb. 8, 1978), included in H.R.Rep. No. 1386, 95th Cong. 2d Sess. 35, reprinted in 1978 U.S. Code Cong. & Admin.News 7530, 7558 (emphasis added).
In spite of the foregoing, Alaska suggests that section 1918 of the Indian Child Welfare Act would be rendered meaningless by any non-divestiture interpretation of Public Law 280. However, the two statutes can be harmonized without construing Public Law 280 as a divestiture statute. See Ruckelshaus v. Monsanto Co., 467 U.S. 986, 1018, 104 S.Ct. 2862, 2880, 81 L.Ed.2d 815 (1984) (statutes capable of being harmonized should be so construed). The relevant portions of the Indian Child Welfare Act enable the Secretary of the Interior to grant to a tribe, upon receipt of a proper petition, exclusive jurisdiction (over all or a portion of the appropriate "Indian country") or referral jurisdiction of child-custody proceedings. See 25 U.S.C. § 1918(b)(2) (1988). Each of these types of jurisdiction is broader than any tribal jurisdiction which is concurrent with the states. Exclusive jurisdiction, of course, is clearly broader than concurrent jurisdiction. Likewise, referral jurisdiction is broader in scope than concurrent jurisdiction, in that referral jurisdiction is concurrent but presumptively tribal jurisdiction. See id. § 1911(b). Thus, there is something for a tribe to "reassume" under section 1918  namely, exclusive or referral *1219 jurisdiction  even if Public Law 280 is read as not divesting the tribes of concurrent jurisdiction.
In sum, giving the benefit of doubt to Alaska, we conclude that Public Law 280 and the Indian Child Welfare Act are, at best, ambiguous as to whether states have exclusive or concurrent jurisdiction over child custody determinations where the tribe has not petitioned for exclusive or referral jurisdiction. Of course, ambiguities are to be resolved to the benefit of Indians. Montana v. Black-feet Tribe, 471 U.S. 759, 766, 105 S.Ct. 2399, 2403, 85 L.Ed.2d 753 (1985). Accordingly, resolving the jurisdictional ambiguities in favor of the villages, we hold that neither the Indian Child Welfare Act nor Public Law 280 prevents them from exercising concurrent jurisdiction. If the native villages of Venetie and Fort Yukon are sovereign entities which may exercise dominion over their members' domestic relations, Alaska must give full faith and credit to any child-custody determinations made by the villages' governing bodies in accordance with the full faith and credit clause of the Indian Child Welfare Act.
Id. 944 F.2d at 560-62.[7]
NOTES
[1] As the court of appeals observed in Harrison v. State, 791 P.2d 359 (Alaska App. 1990):

Where a federal question is involved, the courts of Alaska are not bound by the decisions of a federal court other than the United States Supreme Court. The converse is also true; federal courts in Alaska are not bound by decisions of Alaska state courts on questions of federal law.
Id., at 363 n. 7 (citations omitted).
[2] Section 1918(a) provides:

Any Indian tribe which became subject to State jurisdiction pursuant to the provisions of the Act of August 15, 1953 (67 Stat. 588), as amended by Title IV of the Act of April 11, 1968 (82 Stat. 73, 78), or pursuant to any other Federal law, may reassume jurisdiction over child custody proceedings. Before any Indian tribe may reassume jurisdiction over Indian child custody proceedings, such tribe shall present to the Secretary for approval a petition to reassume such jurisdiction which includes a suitable plan to exercise such jurisdiction.
The Act of August 15, 1953 is commonly referred to as "Public Law 280." Alaska has been a "Public Law 280" state since 1958. 72 Stat. 545 (1958).
[3] We have reviewed Circle's remaining arguments and have concluded that they lack merit.
[1] The policy of ICWA was based on the following congressional findings:

Recognizing the special relationship between the United States and the Indian tribes and their members and the Federal responsibility to Indian people, the Congress finds 
(1) that Clause 3, section 8, article I of the United States Constitution provides that "The Congress shall have Power ... To regulate Commerce... with Indian tribes" and, through this and other constitutional authority, Congress has plenary power over Indian affairs;
(2) that Congress, through statutes, treaties, and the general course of dealing with Indian tribes, has assumed the responsibility for the protection and preservation of Indian tribes and their resources;
(3) that there is no resource that is more vital to the continued existence and integrity of Indian tribes than their children and that the United States has a direct interest, as trustee, in protecting Indian children who are members of or are eligible for membership in an Indian tribe;
(4) that an alarmingly high percentage of Indian families are broken up by the removal, often unwarranted, of their children from them by nontribal public and private agencies and that an alarmingly high percentage of such children are placed in non-Indian foster and adoptive homes and institutions; and
(5) that the States, exercising their recognized jurisdiction over Indian child custody proceedings through administrative and judicial bodies, have often failed to recognize the essential tribal relations of Indian people and the cultural and social standards prevailing in Indian communities and families.
25 U.S.C. § 1901 (1988).
[2] Barbara Ann Atwood, Fighting Over Indian Children: The Uses and Abuses of Jurisdictional Ambiguity, 36 UCLA L.Rev. 1051, 1058 (1989); citing to § 1902. Section 1902 states:

The Congress hereby declares that it is the policy of this Nation to protect the best interests of Indian children and to promote the stability and security of Indian tribes and families by the establishment of minimum Federal standards for the removal of Indian children from their families and the placement of such children in foster or adoptive homes which will reflect the unique values of Indian culture, and by providing for assistance to Indian tribes in the operation of child and family service programs.
[3] H.R.Rep. No. 1386, 95th Cong., 2d Sess. 9, reprinted in 1978 U.S.Code Cong. & Admin.News 7530, 7531.
[4] 25 U.S.C. § 1911(a) provides:

An Indian tribe shall have jurisdiction exclusive as to any State over any child custody proceeding involving an Indian child who resides or is domiciled within the reservation of such tribe, except where such jurisdiction is otherwise vested in the State by existing Federal law. Where an Indian child is a ward of a tribal court, the Indian tribe shall retain exclusive jurisdiction, notwithstanding the residence or domicile of the child.
Section 1911(b) provides:
In any State court proceeding for the foster care placement of, or termination of parental rights to, an Indian child not domiciled or residing within the reservation of the Indian child's tribe, the court, in the absence of good cause to the contrary, shall transfer such proceeding to the jurisdiction of the tribe, absent objection by either parent, upon the petition of either parent of the Indian custodian or the Indian child's tribe: Provided, That such transfer shall be subject to declination by the tribal court of such tribe.
[5] Section 1903(8) states:

"Indian tribe" means any Indian tribe, band, nation, or other organized group or community of Indians recognized as eligible for the services provided to Indians by the Secretary because of their status as Indians, including any Alaska Native village as defined in section 1602(c) of Title 43.
[6] Section 1918 limits the jurisdiction granted in sections 1911(a) & (b). Section 1918(a) provides:

Any Indian tribe which became subject to State jurisdiction pursuant to the provisions of the Act of August 15, 1953 (67 Stat. 588), as amended by Title IV of the Act of April 11, 1968 (82 Stat. 73, 78), or pursuant to any other Federal law, may reassume jurisdiction over child custody proceedings. Before any Indian tribe may reassume jurisdiction over Indian child custody proceedings, such tribe shall present to the Secretary for approval a petition to reassume such jurisdiction which includes a suitable plan to exercise such jurisdiction.
[7] In regard to the majority's reliance on Native Village of Stevens v. Alaska Management & Planning, 757 P.2d 32 (Alaska 1988), I reaffirm the views expressed in my dissenting opinion in that case and take this occasion to explicitly reiterate my conclusion that:

As stated earlier I agree with the court that there has never been any express federal recognition of Alaska Native villages as tribes for purposes of sovereign immunity. However, it is equally clear that Congress has never expressly denied sovereign immunity to these villages. The unfortunate but inescapable fact is that Congress has steadfastly avoided defining the extent and limits of Native sovereignty in Alaska. Illustrative of this fact are the recent "1991" amendments to ANCSA, in which Congress declared, "[N]o provision of this Act shall... confer on, or deny to, any Native organization any degree of sovereign governmental authority over lands ... or persons in Alaska...." Alaska Native Claims Settlement Act Amendments of 1987, Pub.L. No. 100-241, § 2(8)(B), 101 Stat. 1788, 1789 (1988). See also id. § 17(a), 101 Stat. 1814.
The Senate Report on the bill stated:
....
This is an issue which should be left to the courts in interpreting applicable law and that these amendments should play no substantive or procedural role in such court decisions. S.Rep. No. 201, 100th Cong. 1st Sess. 23 (1987), U.S.Code Cong. & Admin.News 1988, pp. 3269, 3274.
Thus, it appears that Congress has chosen to abdicate to the courts on this issue. In the absence of any express federal recognition or waiver of sovereign immunity, this court is bound to follow the common law principles of tribal sovereign immunity announced by the Supreme Court. In my view the court's opinion fails to do this.
Id. at 49-50.