**Larry HERNANDEZ, Appellant,**

v.

**Louise LAMBERT, Appellee.**

No. S–7690.

Supreme Court of Alaska.

Jan. 2, 1998.

Fleur L. Roberts, Law Offices of Fleur L. Roberts, Fairbanks, for Appellant.

Christine A. McLeod, Andrew Harrington, and Robert K. Hickerson, Alaska Legal Services Corporation, Fairbanks, for Appellee.

Mark Andrews and Michael Walleri, for Amicus Curiae Tanana Chiefs Conference.

Lloyd Benton Miller, Sonosky, Chambers, Sachse, Miller & Munson, for Amicus Curiae Native Village of Tanana.

Heather R. Kendall, Native American Rights Fund, for Amicus Curiae Alaska Inter–Tribal Counsel.

Before COMPTON, C.J., and MATTHEWS, EASTAUGH, FABE and BRYNER, JJ.

*OPINION*

BRYNER, Justice.

At issue here is the timeliness of a superior court paternity action that conflicted with an adoption order issued by an Alaska tribal court five years previously. The superior court ruled that the tribal order was valid, that its issuance triggered Alaska's one-year time limit on challenges to adoption decrees, and that the paternity action was therefore time-barred. We agree that the paternity action is time-barred but reach this conclusion without deciding the validity of the tribal adoption order; we conclude that, whatever its validity when originally entered, the order became legally cognizable upon the State's issuance of a new certificate of birth ratifying it as an adoption by tribal custom.

## I. FACTS AND PROCEEDINGS

On February 26, 1990, Sandra Joseph gave birth to a baby boy, C.L., in Fairbanks. Joseph, who resided in Tanana, was unmarried at the time and declined to name C.L.'s father on the birth certificate. It is undisputed that Joseph was acquainted with Larry Hernandez before she gave birth to C.L. and that she and Hernandez had sexual relations at some time prior to the birth.[1] Joseph's relationship with Hernandez ended some time in 1989; Hernandez evidently left Tanana without learning of Joseph's pregnancy.

Several weeks after C.L.'s birth, Joseph gave custody of her son to Louise and Russell Lambert, her sister and brother-in-law. With Joseph's consent, the Lamberts petitioned for adoption of C.L.; since Joseph, C.L., and Louise Lambert are all enrolled members of the Native Village of Tanana, the Lamberts pursued the adoption through the Tanana Tribal Court, which held a hearing

on their petition. The court sent Joseph notice of the hearing, but she did not appear. Because Joseph declined to name her child's father, the court listed the father's identity as unknown and made no attempt at service.

On September 4, 1990, the tribal court issued an order finding the proposed adoption to be in C.L.'s best interest. The order terminated Joseph's parental rights, declared Russell and Louise Lambert to be C.L.'s parents for all legal purposes, and directed a new birth certificate to be issued reflecting the adoption. That same day, the court forwarded notice of the adoption to the Secretary of Interior's Office and dispatched to the Alaska Department of Health and Social Services, Bureau of Vital Statistics, a form entitled, "Report of Adoption Occurring Under Tribal Custom." Upon receipt of the report, the Bureau of Vital Statistics issued a new birth certificate, naming Russell and Louise Lambert as C.L.'s parents.

Some two or three years later, in 1992 or 1993, while at a party in Fairbanks, Hernandez encountered Joseph for the first time since the end of their relationship. Joseph told Hernandez that she had given birth to a child, and Hernandez surmised that the child might be his.[2]

More than a year later, on March 8, 1995, Hernandez petitioned the superior court to determine if he was C.L.'s biological father and, if in fact he was, to establish support, custody, and visitation.

By then, the Lamberts had divorced, and Louise Lambert had been awarded sole physical custody of C.L. Lambert moved to dismiss Hernandez's petition, arguing that the case belonged in the Tanana Tribal Court and that the superior court lacked subject matter jurisdiction. Alternatively, Lambert moved for summary judgment, arguing that the superior court was required to give full faith and credit to the tribal adoption order.

---

1. The parties agree that Joseph and Hernandez had sexual relations. Although Hernandez claims that he and Joseph "lived together for several years," we find nothing in the record to support the claim. Joseph has expressly denied having sexual relations with Hernandez during the period of time when C.L. was conceived.

2. According to Hernandez, Joseph showed him a picture of C.L.; after both agreed that C.L. "might look like" Hernandez, Joseph told Hernandez that he was C.L.'s father. Joseph's account of the conversation differs: she denies informing Hernandez that C.L. was his child. Joseph claims that she in fact knows C.L.'s father to be another man.

Lambert maintained that Hernandez had no right to displace C.L.'s adoptive father and that Hernandez's paternity action was in any event time-barred, since it was filed more than one year after the tribal adoption order was issued.

In opposition to Lambert's motion, Hernandez argued that the superior court had exclusive jurisdiction over the issue of C.L.'s paternity because tribal courts within Alaska are not empowered to exercise jurisdiction in child custody cases. Hernandez also asserted that the tribal adoption order was not entitled to full faith and credit because it was issued without notice to him, thereby violating his rights to equal protection and due process.[3]

Superior Court Judge Niesje J. Steinkruger granted Lambert's motion for summary judgment. Finding that the tribal order was a valid decree of adoption and was entitled to full faith and credit,[4] Judge Steinkruger concluded that Hernandez's paternity action was foreclosed because Hernandez had "presented no genuine issues of material fact regarding the validity of the [tribal] adoption." Alternatively, Judge Steinkruger found that Hernandez's petition was barred by AS 25.23.140(b), Alaska's one-year statute of lim-

itations governing challenges to adoption decrees. Hernandez appealed.

## II. DISCUSSION

On appeal,[5] Hernandez argues that the 1990 tribal adoption order violated his constitutional right to due process [6] because he was given no notice of the adoption proceeding. Hernandez insists that the constitutionally flawed decree does not deserve full faith and credit and does not preclude the superior court from adjudicating the merits of his paternity action.

■ This argument, however, presents a threshold question of timeliness. Since Hernandez's paternity action relies on his assertion that the tribal adoption order is invalid for lack of notice, and since the action was filed almost five years after the adoption order was issued, we must inquire whether the paternity action is barred by the time limit set out in AS 25.23.140(b). This statute provides, in relevant part, that "upon the expiration of one year after an adoption decree is issued, the decree may not be questioned ... in any manner upon any ground, including ... failure to give any required notice, or lack of jurisdiction of the parties or of the subject matter[.]" [7]

---

3. Hernandez initially asked the court to order DNA testing to establish his paternity and to delay consideration of the dismissal and summary motions pending completion of the tests. The superior court denied this request, explaining that "[t]he jurisdictional issue and legal issue of whether this action can proceed or the tribal adoption has finality is not dependent on DNA testing."

4. Judge Steinkruger acknowledged this court's decisions holding that Alaska's tribal courts lack jurisdiction in child custody cases. See In re F.P., 843 P.2d 1214 (Alaska 1992), cert. denied sub nom. Circle Native Community v. Alaska Dep't of Health and Social Services, 508 U.S. 950, 113 S.Ct. 2441, 124 L.Ed.2d 659 (1993); In re K.E., 744 P.2d 1173 (Alaska 1987); Native Village of Nenana v. State, Dep't of Health and Social Serv., 722 P.2d 219 (Alaska 1986), cert. denied, 479 U.S. 1008, 107 S.Ct. 649, 93 L.Ed.2d 704 (1986). The judge nevertheless found these cases superseded by recent developments in the federal arena, particularly the Department of Interior's publication in 1995 of a notice listing various Alaska Native villages, including the Native Village of Tanana, as Indian tribes, see Indian Entities Recognized and Eligible to Receive Services From the United States Bureau of Indian Affairs,

60 Fed.Reg. 9250 (1995). Concluding that the Tanana Tribal Court was now empowered to assert jurisdiction over adoptions, the judge found that the 1990 tribal adoption order was entitled to full faith and credit under 25 U.S.C. § 1911(d). The judge alternatively concluded that, even if the tribal court lacked formal jurisdiction, its order would be entitled to full faith and credit under AS 25.23.160, which requires that "[a] decree of court ... establishing the relationship by adoption issued under due process of law by a court of any other jurisdiction within or outside of the United States shall be recognized in this state."

5. Rulings on summary judgment are subject to de novo review and may be affirmed on grounds different than those advanced by the trial court. James v. McCombs, 936 P.2d 520, 523 n. 2 (Alaska 1997).

6. See U.S. Const. amend. XIV; Alaska Const. art. 1, § 7.

7. The full text of AS 25.23.140(b) is as follows:

Subject to the disposition of an appeal, upon the expiration of one year after an adoption decree is

Hernandez asserts the tribal decree's invalidity based on lack of notice; he further suggests that Joseph's failure to disclose to the Tanana Tribal Court his identity as C.L.'s father might have constituted a fraud. But lack of notice and fraud are both specifically included in the statutory list of grounds that become time-barred "upon the expiration of one year after an adoption decree is issued[.]" [8] *Id.* Hence, these grounds provide no basis for relaxation of the statute.[9]

Hernandez seeks to escape the clear language of the statutory time bar by asserting that his paternity action is an independent proceeding rather than a challenge to the tribal adoption order. This assertion, however, is at odds with Hernandez's primary argument that the tribal order is not entitled to full faith and credit because it is constitutionally flawed.

■ Hernandez also observes that the Lamberts are now divorced and that Louise Lambert has been awarded sole physical custody of C.L. Given Russell Lambert's departure from the adoptive household, Hernandez suggests that the paternity action is not inconsistent with the tribal adoption order— that there is now room for a new father in C.L.'s life. However, the Lamberts' divorce and the consequent award of physical custody to Louise neither terminated Russell's parental rights and obligations nor displaced him as C.L.'s adoptive father.

■ Hernandez lastly notes that the tribal adoption order did not expressly terminate the parental rights of C.L.'s biological father; Hernandez argues that, for this reason, his claim of parental rights in the paternity action does not conflict with the adoption order. Yet the adoption order's omission of specific language terminating the parental rights of C.L.'s biological father is of no particular consequence, since, even without express termination language, the legal effect of the order was to "relieve the natural parents of the adopted person of all parental rights and responsibilities, and, ... terminate all legal relationships between the adopted person and the natural parents[.]" AS 25.23.130(a). In naming Louise and Russell Lambert as C.L.'s parents, the adoption decree necessarily terminated any putative biological father's rights. *See Delgado v. Fawcett,* 515 P.2d 710 (Alaska 1973).

This being the case, Hernandez's filing of a paternity action that claimed parental rights as to C.L. unmistakably had the effect of questioning the tribal adoption order; the paternity action thus ran afoul of the statutory injunction that an adoption decree "may not be questioned ... in any manner upon any ground." AS 25.23.140(b).

■ To be sure, this court's prior holdings indicate that the Tanana Tribal Court lacked authority to issue a decree of adoption. *See In re F.P.,* 843 P.2d 1214 (Alaska 1992), *cert. denied sub nom. Circle Native Community v. Alaska Dep't of Health and Social Serv.,*

issued, the decree may not be questioned by any person including the petitioner, in any manner upon any ground, including fraud, misrepresentation, failure to give any required notice, or lack of jurisdiction of the parties or of the subject matter, unless, in case of the adoption of a minor the petitioner has not taken custody of the minor, or, in the case of the adoption of an adult, the adult had no knowledge of the decree within the one-year period.

8. Hernandez does not argue, as he did below, that the Tanana Tribal Court lacked jurisdiction over C.L.'s adoption. Even if he did make this argument, it would have no bearing on the applicability of AS 25.23.140(b), since jurisdictional questions are also listed in the statute as being covered by the time limit.

9. Hernandez does not challenge the validity of the time bar itself. We note that AS 25.23.140(b) is virtually identical to Uniform Adoption Act

§ 15 and that similar statutes have consistently withstood constitutional challenges in other jurisdictions. *See, e.g., Syrovatka v. Erlich,* 608 F.2d 307, 310–11 (8th Cir.1979), *cert. denied,* 446 U.S. 935, 100 S.Ct. 2152, 64 L.Ed.2d 788 (1980) (finding statute of limitations barred natural parents from contesting an adoption where original notice to adoption proceeding failed due process standards); *Hogue v. Olympic Bank,* 76 Or.App. 17, 708 P.2d 605, 611 (1985), *review denied,* 300 Or. 545, 715 P.2d 92 (1986) (finding that statute finalizing adoption proceedings did not violate due process rights even where the court issuing the adoption decree had defective jurisdiction); *see also In re Adoption of Lori Gay W.,* 589 P.2d 217, 220 (Okla.1978), *cert. denied,* 441 U.S. 945, 99 S.Ct. 2165, 60 L.Ed.2d 1047 (1979) (citing *White v. Davis,* 163 Colo. 122, 428 P.2d 909 (1967)).

508 U.S. 950, 113 S.Ct. 2441, 124 L.Ed.2d 659 (1993); *In re K.E.*, 744 P.2d 1173 (Alaska 1987); *Native Village of Nenana v. State, Dep't of Health and Social Serv.*, 722 P.2d 219 (Alaska 1986), *cert. denied,* 479 U.S. 1008, 107 S.Ct. 649, 93 L.Ed.2d 704 (1986). These decisions raise the question of whether the Tanana Tribal Court's adoption order should be deemed to be an "adoption decree" within the meaning of AS 25.23.140(b), so as to trigger the one-year period of limitation. Lambert nevertheless argues that even if the Tanana Tribal Court lacked jurisdiction to issue an adoption decree, the State of Alaska had authority to recognize the tribal court's adoption order as a customary adoption of an Indian child. Lambert contends that the State did just that by issuing a new Alaska certificate of birth.

■ We find this argument persuasive.[10] Under 7 Alaska Administrative Code (AAC) 05.700(a), the Bureau of Vital Statistics is

charged with authority to issue new certificates of birth "for persons born in Alaska, upon adoption." [11] Under 7 AAC 05.700(b) (1996), the Bureau's authority extends to Indian adoptions that have "occurred under tribal custom." In the present case, the Tanana Tribal Court sent the Bureau of Vital Statistics a "Report of Adoption Occurring Under Tribal Custom"; the Bureau, in accordance with 7 AAC 05.700(b), issued a new birth certificate naming the Lamberts as C.L.'s parents. The effect of the Bureau's action was to ratify the tribal adoption proceeding and imbue the tribal court's order with sufficient legal color to warrant its treatment as "an adoption decree" within the meaning of AS 25.23.140(b).

■ Hernandez's case thus falls squarely within the letter and spirit of the statutory time bar. Adoptive custody results in the rapid development of lasting and powerful psychological ties between adoptive parents

**10.** As we have already noted in footnote 4 above, Judge Steinkruger undertook a reexamination of this court's decisions on tribal jurisdiction, found them superseded, and thus concluded that the Tanana Tribal Court's adoption order was a valid adoption decree. Judge Steinkruger's alternative conclusion that Hernandez's claim was time-barred likewise presumed that the tribal order was a valid adoption decree and that its issuance thus triggered the one-year time limit specified in AS 25.23.140(b).

Since we affirm the trial court's summary judgment order on a legal ground different than that relied on below, we find no occasion to reexamine our prior decisions. *Cf. In re F.P.*, 843 P.2d 1214 (Alaska 1992), *cert. denied sub nom. Circle Native Community v. Alaska Dep't of Health and Social Serv.*, 508 U.S. 950, 113 S.Ct. 2441, 124 L.Ed.2d 659 (1993). We similarly decline to consider whether the Tanana Tribal Court's adoption order was entitled to full faith and credit under AS 25.23.160.

**11.** The full text of 7 AAC 05.700 is as follows:

**NEW CERTIFICATE OF BIRTH.** (a) The bureau shall establish a new certificate of birth, upon proper request that such certificate be made, for persons born in Alaska, upon adoption or legitimation and the submission of the required documents and other necessary information as required by the State Registrar; provided that such new certificate of birth shall not be established in cases of adoption if such negative request be received from the court decreeing the adoption, the person himself if of legal age, or from the adoptive parents.

(b) When the adoption of an Indian child, as defined in 25 U.S.C.1903(4), has occurred under tribal custom the state registrar will require the following documents and information to issue a new certificate of birth:

(1) a statement, on a form provided by the bureau, signed by each biological parent, unless one or both of the parents is deceased, cannot be contacted through reasonable means, or is an unwed father where paternity has not been acknowledged or established:

(A) identifying the child and the tribe of the child, as defined in 25 U.S.C.1903(5); and

(B) affirming that under tribal custom an adoption has occurred;

(2) a request for a new birth certificate, on a form provided by the bureau, signed by an adoptive parent; and

(3) a written statement, on a form provided by the bureau, from the governing body of the child's tribe, as defined in 25 U.S.C.1903(5), affirming that:

(A) an Indian child has been adopted under tribal custom; the statement must identify the child, each known biological parent, and each adoptive parent;

(B) the tribe has not been informed of any person or agency who is asserting a claim to custody under state or tribal law;

(C) one of the adoptive parents is an Indian, as defined in 25 U.S.C.1903(3); and

(D) when one or both of the biological parents cannot be located to provide the statement required by (b)(1) of this section, the parent knew or had notice of the adoption at the time it occurred, except in cases involving an unwed father where paternity has not been acknowledged or established.

and children, especially young children. Once formed, these bonds can seldom be severed without irreparable damage to the child's well-being. In terms of this potential harm, it matters little whether the adoptive relationship arises by formal decree or through tribal custom. Alaska's stringent one-year limit on challenges to adoption decrees stands as testament to this practical reality. As we said in *In re T.N.F.*, 781 P.2d 973, 980 (1989), *cert. denied sub nom. Jasso v. Finney*, 494 U.S. 1030, 110 S.Ct. 1480, 108 L.Ed.2d 616 (1990):

> To allow collateral attacks on final adoption decrees at any time threatens to unreasonably disrupt the upbringing of the adopted child. AS 25.23.140 is a strong policy statement by the Alaska Legislature that an adoption decree should not be challenged on any ground after one year.

Hernandez's case poses precisely this kind of threat. Hernandez made no effort to claim paternity or have contact with C.L. until almost five years after the Lamberts became C.L.'s adoptive parents; by the time Hernandez's paternity action was filed, well over a year had passed since he was told of C.L.'s birth and actually realized that C.L. might be his son. Even if we assume that AS 25.23.140(b)'s one-year limit did not begin to run until Hernandez actually became aware of his potential claim to parental rights, his paternity action would be well beyond the allowable time for filing.[12]

Alaska's one-year filing limit embodies a careful balance between competing interests: on one hand, the interest of preserving "stability in a family relationship, particularly when a young minor is involved"; on the other hand, the interest of avoiding "the possible loss to a person whose rights are cut off through fraud or ignorance." Unif. Adoption Act § 15, 9 U.L.A.

102–03 cmt. (1988). Here, the balance tips decidedly against Hernandez. Any interest Hernandez might once have had in claiming parental rights to C.L. has clearly not been cut off through fraud or ignorance, but rather through neglect and delay.[13]

## III. CONCLUSION

The Superior Court's order granting summary judgment is AFFIRMED.

---

**12.** Some courts construing statutes of limitation similar to AS 25.23.140(b) have suggested that a discovery rule must be applied to the commencement of the time limit in order to avoid potential constitutional problems. *See, e.g., In re Adoption of Lori Gay W.*, 589 P.2d 217, 222 (Okla.1978), *cert. denied sub nom. Strouse v. Winter*, 441 U.S. 945, 99 S.Ct. 2165, 60 L.Ed.2d 1047 (1979); *see also Sumter v. Allton*, 278 Ark. 621, 648 S.W.2d 55 (1983); *Wade v. Geren*, 743 P.2d 1070 (Okla.

1987). Since Hernandez's action is barred under any interpretation of the Alaska statute, we need not determine whether AS 25.23.140(b) is subject to a discovery rule.

**13.** Our conclusion that Hernandez's paternity action was time-barred makes it unnecessary for us to consider whether the tribal adoption order violated Hernandez's right to due process.