**Sandra GOLIVER, Appellant,**

v.

**Marvin and Patricia McALLISTER, Appellees.**

**No. S–9977.**

Supreme Court of Alaska.

Nov. 2, 2001.

---

**60.** *See* AS 14.14.060(c).

**61.** *See Tunley,* 631 P.2d at 75.

**62.** *Macauley,* 491 P.2d at 122.

**63.** Majority Opinion at 314.

Sandra Goliver, Palmer, pro se.

Tara N. Logsdon, Golter & Logsdon, PC, Wasilla, for Appellees.

Before: FABE, Chief Justice, MATTHEWS, EASTAUGH, BRYNER, and CARPENETI, Justices.

*OPINION*

MATTHEWS, Justice.

On August 25, 2000, Sandra Goliver moved to set aside the March 8, 1999 adoption of her three-year-old son by her parents, Marvin and Patricia McAllister. Goliver contended that the adoption was a sham entered into to protect the child from his biological father who she believed had sexually abused other children. Without an evidentiary hearing, the trial court ruled that Goliver's motion was barred by the one-year period of limitations set out in AS 25.23.140(b).[1] Goliver appeals, contending, among other things, that the court should have conducted an evidentiary hearing in order to determine whether her motion was time-barred. We agree and remand the case to the superior court for such a hearing.

The issue of whether a period of limitations has expired, like most other fact-based issues, may be determined without an evidentiary hearing only when there are no genuine issues of material fact.[2] Here the critical issue is whether the McAllisters had "taken custody" of Tate more than a year prior to Goliver's motion to set aside the adoption.[3] This calls for a legal conclusion that must be based upon the facts regarding the parties' conduct, as well as reasonable inferences that may be drawn from these facts. In deciding whether there are genuine issues of fact requiring a hearing, reasonable

---

**1.** AS 25.23.140(b) provides:

Subject to the disposition of an appeal, upon the expiration of one year after an adoption decree is issued, the decree may not be questioned by any person including the petitioner, in any manner upon any ground, including fraud, misrepresentation, failure to give any required notice, or lack of jurisdiction of the parties or of the subject matter, unless, in the case of the adoption of a minor the petitioner has not taken custody of the minor, or, in the case of the adoption of an adult, the adult had no knowledge of the decree within the one-year period.

**2.** *See Pedersen v. Zielski*, 822 P.2d 903, 908 (Alaska 1991).

**3.** The parties assume that AS 25.23.140(b) means that the period of limitations runs from the time the adoptive parents take custody of the child. This is a reasonable interpretation of the statute and we accept it for the purposes of this case. We note that the statute might be read to mean that the one-year period starts with the adoption decree if at any time before the challenge to the adoption is filed the adoptive parents take custody of the child.

inferences must be drawn in favor of the party seeking the hearing.[4]

In the present case some of the facts relevant to the custody of Tate are undisputed. Goliver lived next door to the McAllisters. Both before and after the adoption, and before June 15, 2000, when the McAllisters were said to have "removed [Tate] from [Goliver's] care," Tate spent most days with the McAllisters and most nights with Goliver. He generally ate three meals a day with the McAllisters. This arrangement also applied to Goliver's three daughters, who were being home-schooled by Patricia McAllister. At the same time, it was Goliver who applied for Tate's 1999 and 2000 permanent fund dividends and filed his tax returns for these dividends. Goliver also applied for and received Medicaid funds to pay for Tate's medical expenses.

Goliver affies conclusorily that "[a]fter the adoption, Tate continued to live with me," and that "Tate did not live with [the McAllisters]." She characterizes her parents' role as that of day care providers. The McAllisters conclusorily affie that "we have taken custody of Tate. We did so immediately upon adopting Tate." They characterize Goliver's post-adoption relationship with Tate as the exercise of visitation rights: "[W]e have allowed frequent visitation, primarily at night, so that Tate could spend time with [Goliver] (who works during the day) and his sisters."

In our view the uncontested facts above do not resolve whether the McAllisters took custody of Tate. The parties' affidavits are not detailed. The undisputed facts yield conflicting interpretations, as the parties' conclusory affidavits illustrate.

■ In *Hernandez v. Lambert*, we discussed the reasons for "Alaska's stringent one-year limit on challenges to adoption decrees."[5] We noted that "[a]doptive custody results in the rapid development of lasting and powerful psychological ties between adoptive parents and children, especially young children. Once formed, these bonds can seldom be severed without irreparable damage to the child's well-being."[6] We also observed:

> Alaska's one-year filing limit embodies a careful balance between competing interests: on one hand, the interest of preserving "stability in a family relationship, particularly when a young minor is involved"; on the other hand, the interest of avoiding "the possible loss to a person whose rights are cut off through fraud or ignorance." Unif. Adoption Act § 15, 9 U.L.A. 102–03 cmt. (1988).[7]

The evident reason for the not-taken-custody exception to the strict one-year period is that undoing an adoption where the exception applies involves either no risk or a reduced risk of destabilizing a newly formed family or severing powerful psychological ties to the adoptive parents.

The court on remand should be mindful of the above purposes. One important fact the court should explore on remand is whether there were substantial changes in the parties' relationship with Tate after the decree of adoption. A related question which may prove relevant is whether the McAllisters' relationship with Tate following the adoption was materially different from their relationship with Goliver's daughters, whom they also cared for. The superior court may also seek to determine who paid for Tate's food, clothing, medical care, and other necessaries and whether this changed following the adoption. By mentioning these issues we do not imply that there may not be others that are also important. We also note that in deciding the ultimate issue as to when the McAllisters took custody of Tate, the definition of "primary physical custody" set out in Civil Rule 90.3(f) is of possible relevance.

For the above reasons the order of the superior court denying Goliver's motion to set aside the adoption is VACATED and this case is REMANDED for an evidentiary

---

**4.** *See Webb v. City and Borough of Sitka,* 561 P.2d 731, 734 (Alaska 1977) ("[O]n a motion for summary judgment all inferences from the underlying facts must be viewed in the light most favorable to the party opposing the motion....").

**5.** 951 P.2d 436, 442 (Alaska 1998).

**6.** *Id.* at 441–42.

**7.** *Id.* at 442.

hearing in order to determine whether the motion is time-barred, and if it is not, for further proceedings.[8]

8. We have reviewed the other contentions of the appellant and find them to be without merit.