NATIVE VILLAGE OF NENANA, Appellant,

v.

STATE of Alaska, DEPARTMENT OF HEALTH & SOCIAL SERVICES, Appellee.

No. S-692.

Supreme Court of Alaska.

July 18, 1986.

16. *See supra* note 15.

Michael J. Walleri, Tanana Chiefs Conference, Inc., Fairbanks, for appellant.

Deborah Howard, Asst. Atty. Gen., Anchorage, Norman C. Gorsuch, Atty. Gen., Juneau, for appellee.

Before RABINOWITZ, C.J., and BURKE, MATTHEWS, COMPTON and MOORE, JJ.

## OPINION

BURKE, Justice.

The question in this appeal is whether, under the Indian Child Welfare Act, Pub.L. 95–608, 92 Stat. 3069 (1978), the superior court erred in denying an Indian tribe's petition for an order transferring the case of an Indian child from the jurisdiction of the court to that of the tribe. We conclude that the lower court properly denied the petition.

### I

The Alaska Department of Health and Social Services petitioned the superior court to determine whether A.N. was a "child in need of aid" under AS 47.10.-010(a)(2)–(C). The Department initiated such action after it learned that A.N. had been physically abused while in the custody of his mother and stepfather in Anchorage. At a probable cause hearing, the court awarded the Department temporary custody pursuant to AS 47.10.140.

A.N.'s natural father is an Athabascan Indian from the Alaska Native village of Nenana. Thus, for purposes of the Indian Child Welfare Act, A.N. is an "Indian child," and the Alaska Native village of Nenana is A.N.'s "Indian tribe." *See* 25 U.S.C. § 1903(4)–(5) (1983). Because of A.N.'s tribal relationship, the village was allowed to intervene in the child in need of aid proceeding. At the proceeding, it petitioned for an order transferring the case to the jurisdiction of the tribe under 25 U.S.C. § 1911(b) (1983) which allows tribal jurisdiction in certain child custody proceedings. The superior court denied the petition and, following entry of a final judgment, the village filed this appeal.

### II

[1] The tribe petitioned for transfer pursuant to 25 U.S.C. § 1911(b). In reaching our decision, we have assumed that the instant case met all of the criteria of section 1911(b), as argued by the Village of Nenana. Moreover, we are cognizant of the fact that the superior court made no finding of "good cause" as a basis for refusing to transfer the case. Nevertheless, we believe the superior court properly denied the tribe's petition for transfer.

The jurisdictional section of the Indian Child Welfare Act provides, in pertinent part:

(a) An Indian tribe shall have jurisdiction exclusive as to any State over any child custody proceeding involving an Indian child who resides or is domiciled within the reservation of such tribe, except where such jurisdiction is otherwise vested in the State by existing Federal law. Where an Indian child is a ward of a tribal court, the Indian tribe shall retain exclusive jurisdiction, notwithstanding the residence or domicile of the child.

(b) In any State court proceeding for the foster care placement of, or termination of parental rights to, an Indian child not domiciled or residing within the reservation of the Indian child's tribe, the court, in the absence of good cause to the contrary, shall transfer such proceeding to the jurisdiction of the tribe, absent objection by either parent, upon the peti-

tion of either parent or the Indian custodian or the Indian child's tribe: *Provided*, That such transfer shall be subject to declination by the tribal court of such tribe.

25 U.S.C. § 1911 (1983) (emphasis in original). The superior court found that "[t]he Native Village of Nenana has not been approved by the Secretary of the United States Department of the Interior to reassume jurisdiction over child custody proceedings pursuant to 25 U.S.C. § 1918." Thus, the court concluded that the tribe was not entitled to exercise jurisdiction and denied the tribe's petition. Section 1918(a), provides:

Any Indian tribe which became subject to State jurisdiction pursuant to the provisions of the Act of August 15, 1953 (67 Stat. 588), as amended by Title IV of the Act of April 11, 1968 (82 Stat. 73, 78), or pursuant to any other Federal law, may reassume jurisdiction over child custody proceedings. *Before any Indian tribe may reassume jurisdiction over Indian child custody proceedings, such tribe shall present to the Secretary for approval a petition to reassume such jurisdiction which includes a suitable plan to exercise such jurisdiction.*

25 U.S.C. § 1918(a) (1983) (emphasis added). The Act of August 15, 1953, mentioned in section 1918(a) and codified as 28 U.S.C. § 1360, is commonly referred to as "Public Law 280." Alaska has been a "280 state" since 1958. Pub.L. 85–615, 72 Stat. 545 (1958).

■ Our reading of 25 U.S.C. § 1918(a), indicates that Congress intended that Public Law 280 give certain states, including Alaska, exclusive jurisdiction over matters involving the custody of Indian children, and that those states exercise such jurisdiction until a particular tribe petitions to reassume jurisdiction over such matters, and the Secretary of the Interior approves tribe's petition.

Although some commentators have concluded that Public Law 280 does not create exclusive state jurisdiction, *see, e.g.,* F. Cohen, *Handbook of Federal Indian Law,*

344–45 (1982 ed.); D. Case, *Alaska Natives and American Laws,* 490 n. 119 (1978), we see no explanation for the mention of Public Law 280 in section 1918(a) unless it required reassumption. *See* Note, *The Indian Child Welfare Act—Tribal Self-Determination Through Participation in Child Custody Proceedings,* 1979 Wis.L. Rev. 1202, 1212 (exclusive jurisdiction under § 1911(a) is not automatic; tribes must petition for reassumption). Regardless of whether Public Law 280 vests exclusive or concurrent jurisdiction in the applicable states, *prior* to the Child Welfare Act, Indian tribes may not have had jurisdiction over custody proceedings in a section 1911(b) situation, *i.e.,* where the child was domiciled off the reservation. *See Wisconsin Potowatomies v. Houston,* 393 F.Supp. 719 (W.D.Mich.1973) (tribe "would have been obligated to submit itself to the jurisdiction of the probate court," if domicile outside reservation); *Jurisdiction of Tribal Court and Colorado Juvenile Court for Determination of Custody of Dependent and Neglected Indian Child,* 62 Interior Dec. 466, 468 (1955) (opinion by Interior Department that tribal custody decree is ineffective because, in part, "the jurisdiction of Indian tribes ceases at the border of the reservation"); *but cf.* F. Cohen at 347–48 ("[o]utside Indian country tribal courts can have jurisdiction based on tribal membership," though most tribes exercise it over only uniquely internal matters). The referral jurisdiction provision may actually grant Indian tribes greater authority than they had prior to the Act.

A task force appointed to study Federal-State-Tribal relations in Alaska recently observed:

[S]everal commentators have argued that, assuming that IRA and traditional councils are otherwise empowered to exercise powers of self-government, Pub.L. 83–280 did not preempt the councils' governmental powers, and, consequently, that Native councils may continue to exercise their jurisdiction concurrently with the state.

**222**

It is difficult to reconcile that conclusion with the subsequent intent of Congress embodied in legislation enacted in 1970 to enable the Metlakatla Indian Community to exercise concurrent criminal jurisdiction.

Report, *Governor's Task Force on Federal-State-Tribal Relations [In Alaska]*, 141–42 (1986) (footnotes omitted). With regard to the particular question of jurisdiction under the Indian Child Welfare Act, the task force concluded: *"Native councils may petition the Secretary of the Interior to assume complete or referral jurisdiction over Native child custody proceedings." Id.* at 152 (emphasis added). This appears to be a reference to 25 U.S.C. § 1911(a) and (b), which supports our interpretation.

For purposes of the Indian Child Welfare Act, the term "Indian tribe" includes any Alaska Native village as defined in section 1602(c) of Title 43 of the United States Code. 25 U.S.C. § 1903(8) (1983). According to section 1602(c):

> "Native village" means any tribe, band, clan, village, community, or association in Alaska listed in sections 1610 and 1615 of this title, or which meets the requirements of this chapter, and which the Secretary [of the Interior] determines was, on the 1970 census enumeration date (as shown by the census or other evidence satisfactory to the Secretary, who shall make findings of fact in each instance), composed of twenty-five or more Natives.

43 U.S.C. § 1602(c) (1983). There are more than 200 such villages "listed" in sections 1610 and 1615 alone. 43 U.S.C. §§ 1610, 1615 (1983). Some of these entities already may have systems for dispute resolution in place capable of adjudicating custody matters in a reasonable and competent fashion; others, no doubt, do not. It seems highly unlikely that Congress was unaware of this when it enacted the Indian Child Welfare Act, or that it intended the Indian tribes in

Alaska to exercise jurisdiction in child custody matters until such time as there is satisfactory proof that a particular tribe has the ability to properly adjudicate such cases.[1]

The judgment is AFFIRMED.

---

**1.** Given the relationship that has always existed between the federal government and the various "Indian tribes," this determination appears to be one that would have to be made by a federal official, in this case, the Secretary of the Interior.