### In the Matter of C.R.H.

### No. S–9677.

Supreme Court of Alaska.

Aug. 31, 2001.

**21.** *See id.* at 842.

**22.** 986 P.2d at 305.

**23.** 29 P.3d at 841.

Chris Provost and Harold N. Brown, Tanana Chiefs Conference, Inc., Fairbanks, for the Native Village of Nikolai.

Donna J. Goldsmith, Assistant Attorney General, and Bruce M. Botelho, Attorney General, Juneau, for the State of Alaska.

Lois J. Schiffer, Assistant Attorney General, Ethan G. Shenkman, Attorney, Department of Justice, Washington, DC, Judith Rabinowitz, Attorney, Department of Justice, San Francisco, CA, John D. Leshy, Solicitor, and Tricia Tingle, Office of the Solicitor, Department of the Interior, Washington, DC, for Amicus Curiae the United States.

Before FABE, Chief Justice, MATTHEWS, EASTAUGH, BRYNER, and CARPENETI, Justices.

### OPINION

FABE, Chief Justice.

### I.  INTRODUCTION

Under subsection 1911(b) of the Indian Child Welfare Act[1] (ICWA), state courts must transfer certain child custody cases to tribal courts unless either the parents or tribe object, or there exists good cause to decline transfer. Following our decisions in *Native Village of Nenana v. State, Department of Health & Social Services* and subsequent cases, however, Alaska Native Villages have been precluded from accepting jurisdic-

tion over ICWA cases.[2]  Neither *Nenana* nor later cases affirming it included analysis of the language and structure of ICWA's transfer provisions in section 1911.  Because we conclude that section 1911 authorizes transfer jurisdiction for federally recognized tribes in Alaska, we hold that tribes may accept transfer jurisdiction under this section of ICWA. We overrule *Nenana* and subsequent decisions affirming its holding to the extent that those cases are inconsistent with today's decision.

### II.  FACTS AND PROCEEDINGS

C.R.H. was born in Anchorage on June 27, 1999.  Her mother is a member of the Native Village of Nikolai, and her father is a member of the Native Village of Chickaloon; C.R.H. is eligible for membership in Nikolai. The State, Department of Health and Social Services (DHSS) assumed emergency custody of C.R.H. on June 30, 1999, and she has not been in her parents' custody since that time.  She currently lives with maternal relatives in Nikolai.  The parties to this appeal agree that this should be C.R.H.'s permanent home, but disagree about the appropriate legal mechanism for finalizing the placement.

DHSS filed for determination that C.R.H. was a child in need of aid and for C.R.H.'s temporary placement on June 30, 1999.  The superior court held a number of probable cause hearings beginning on July 2, 1999. After the first probable cause hearing, the superior court found temporary probable cause and ordered DHSS to take temporary custody pending a second hearing.  At the second hearing, on July 7, the Chickaloon Village Traditional Council moved to intervene as the child's tribe under ICWA and requested that the case be transferred to the tribal court.  At the third hearing, on July 12, the parties stipulated to temporary legal custody with DHSS, Division of Family and Youth Services (DFYS), pending legal resolution of the intervention and jurisdiction questions in this case.  The parties also later stipulated that C.R.H. was a child in need of aid.

---

**1.**  25 U.S.C. §§ 1901–1963 (2000).

**2.**  722 P.2d 219 (Alaska 1986); *In re F.P.*, 843 P.2d 1214 (Alaska 1992); *In re K.E.*, 744 P.2d 1173 (Alaska 1987).

On August 3, 1999, the Native Village of Nikolai, represented by the Tanana Chiefs Conference, filed its first motion to intervene. During the hearing, a Tanana Chiefs attorney informed the superior court that the Villages of Chickaloon and Nikolai had agreed that Nikolai would act as C.R.H.'s tribe for ICWA purposes; Chickaloon requested that its own motions be held in abeyance in favor of Nikolai's. The court granted Nikolai's motion to intervene under ICWA and its motion for determination that Nikolai was C.R.H.'s ICWA tribe.

Nikolai then moved to transfer jurisdiction to the Nikolai tribal court. The State argued in opposition that under the *Nenana* line of cases, Public Law 280[3] (P.L. 280) barred Nikolai from asserting jurisdiction over an ICWA case unless Nikolai had reassumed jurisdiction to adjudicate ICWA cases under 25 U.S.C. § 1918. The State's brief stated that "[a]lthough the Department wishes this were not the law in this state, it is constrained, as is [the superior] court, to follow [the *Nenana* line of cases] until the Alaska

Supreme Court overrules these decisions." The superior court denied Nikolai's transfer motion. It directed entry of final judgment for purposes of appeal under Alaska Civil Rule 54(b), while retaining jurisdiction over the rest of the case. Nikolai brings this appeal, which is limited to the tribal court transfer issue.

## III. STANDARD OF REVIEW

■ The parties do not dispute any legally relevant facts. The questions presented are solely questions of law, to which we apply our independent judgment.[4]

## IV. DISCUSSION

■ Federally recognized tribes, including the Native Village of Nikolai,[5] retain their sovereign powers unless Congress specifically withdraws their authority.[6]

Under P.L. 280, Congress extended Alaska state courts' jurisdiction to "all Indian country" within Alaska.[7] This court interpreted

---

**3.** Act of August 15, 1953, Pub.L. 83–280, 67 Stat. 588, 589 (codified as amended at 18 U.S.C. § 1162, 25 U.S.C. §§ 1321–26, 28 U.S.C. § 1360).

**4.** See *Temple v. Denali Princess Lodge,* 21 P.3d 813, 815 (Alaska 2001).

**5.** We follow the U.S. Congress's determination that Alaska Native tribes are sovereign powers under federal law. See *John v. Baker,* 982 P.2d 738, 749 (Alaska 1999), *cert. denied,* 528 U.S. 1182, 120 S.Ct. 1221, 145 L.Ed.2d 1121 (2000). In *John,* we affirmed the Native Village of Northway's sovereignty based on the village's inclusion in the Department of the Interior's 1993 tribe list and the 1994 Tribe List Act. See *id.* at 750. Like Northway Village, Nikolai Village is on the Department of the Interior's 1993 tribe list, see *Indian Entities Recognized and Eligible to Receive Services from the United States Bureau of Indian Affairs,* 58 Fed.Reg. 54,364, 54,369 (1993), and on every tribe list since issued by that Department. See *Indian Entities Recognized and Eligible to Receive Services from the United States Bureau of Indian Affairs,* 60 Fed.Reg. 9250, 9255 (1995); *Indian Entities Recognized and Eligible to Receive Services from the United States Bureau of Indian Affairs,* 61 Fed.Reg. 58,211, 58,215 (1996); *Indian Entities Recognized and Eligible to Receive Services from the United States Bureau of Indian Affairs,* 62 Fed.Reg. 55,270, 55,275 (1997); *Indian Entities Recognized and Eligible to Receive Services from the United States Bureau of Indian Affairs,* 63 Fed.Reg. 71,941, 71,945

(1998); *Indian Entities Recognized and Eligible to Receive Services from the United States Bureau of Indian Affairs,* 65 Fed.Reg. 13,298, 13,302 (2000). In the Tribe List Act, Congress recognizes as an Indian tribe "any Indian or Alaska Native tribe, band, nation, pueblo, village or community that the Secretary of the Interior acknowledges to exist as an Indian tribe." 25 U.S.C. § 479a(2) (2000).

**6.** See *John,* 982 P.2d at 751; *see also Iowa Mutual Ins. Co. v. LaPlante,* 480 U.S. 9, 18, 107 S.Ct. 971, 94 L.Ed.2d 10 (1987); *Merrion v. Jicarilla Apache Tribe,* 455 U.S. 130, 149, 102 S.Ct. 894, 71 L.Ed.2d 21 (1982).

**7.** 28 U.S.C. § 1360(a) provides:

Each of the States listed in the following table shall have jurisdiction over civil causes of action between Indians or to which Indians are parties which arise in the areas of Indian country listed opposite the name of the State to the same extent that such State has jurisdiction over other civil causes of action, and those civil laws of such State that are of general application to private persons or private property shall have the same force and effect within such Indian country as they have elsewhere within the State:

| State of | Indian country affected |
| --- | --- |
| Alaska | All Indian country within the State. |

P.L. 280 in *Native Village of Nenana,* holding that through that law Congress effectively divested tribal jurisdiction and granted the state "exclusive jurisdiction over matters involving the custody of Indian children."[8] State jurisdiction remained exclusive, we held, unless a tribe governed by P.L. 280 successfully petitioned to reassume custody under ICWA section 1918.[9]

Nikolai urges us to reconsider *Nenana*'s interpretation of P.L. 280, and to hold that the Alaska Native tribes affected by P.L. 280 retain jurisdiction concurrent with that of the state. We need not reach this issue, however, because the jurisdiction claimed by Nikolai exists regardless of P.L. 280: Subsection 1911(b) tribal transfer jurisdiction over ICWA custody cases was expressly approved by Congress in enacting ICWA. The language and structure of section 1911 reflect congressional intent that all tribes, regardless of their P.L. 280 status, be able to accept transfer jurisdiction of ICWA cases from state courts. We therefore hold that Nikolai may assume jurisdiction over this case under ICWA's subsection 1911(b) transfer provision. To the extent that *Nenana,*[10] *F.P.,*[11] and *K.E.*[12] are inconsistent with this decision, those cases are overruled.[13]

ICWA section 1911 reads in critical part:

### (a) *Exclusive jurisdiction*

An Indian tribe shall have jurisdiction exclusive as to any State over any child custody proceeding involving an Indian child who resides or is domiciled within the reservation of such tribe, except where such jurisdiction is otherwise vested in the State by existing Federal law. Where an Indian child is a ward of a tribal court, the Indian tribe shall retain exclusive jurisdiction, notwithstanding the residence or domicile of the child.

### (b) *Transfer of proceedings; declination by tribal court*

In any State court proceeding for the foster care placement of, or termination of parental rights to, an Indian child not domiciled or residing within the reservation of the Indian child's tribe, the court, in the absence of good cause to the contrary, shall transfer such proceeding to the jurisdiction of the tribe, absent objection by either parent, upon the petition of either parent or the Indian custodian or the Indian child's tribe: Provided, That such transfer shall be subject to declination by the tribal court of such tribe.[14]

As the above language makes clear, Congress intended P.L. 280 to affect tribes' exclusive jurisdiction under subsection 1911(a), but did not intend P.L. 280 to affect transfer jurisdiction under subsection 1911(b). Subsection 1911(a) grants tribes exclusive jurisdiction over cases involving children who reside on reservations "*except where such jurisdiction is otherwise vested in the State by existing Federal law*" such as

---

8. 722 P.2d 219, 221 (Alaska 1986).

9. *Id.* at 221. In *John,* we noted that P.L. 280 does not apply to those Alaska Native tribes that do not occupy Indian country. 982 P.2d at 748.

10. *Native Village of Nenana v. State, Dep't of Health & Soc. Servs.,* 722 P.2d 219 (Alaska 1986).

11. *In re F.P.,* 843 P.2d 1214 (Alaska 1992).

12. *In re K.E.,* 744 P.2d 1173 (Alaska 1987).

13. *Nenana* based its analysis primarily on the language of ICWA section 1918. *See* 722 P.2d at 221–22. As the discussion above makes clear, we now find that section 1911 and not section 1918 controls this legal question.

14. 25 U.S.C. § 1911. The remainder of § 1911 provides:

(c) *State court proceedings; intervention*
In any State court proceeding for the foster care placement of, or termination of parental rights to, an Indian child, the Indian custodian of the child and the Indian child's tribe shall have a right to intervene at any point in the proceeding.
(d) *Full faith and credit to public acts, records, and judicial proceedings of Indian tribes*
The United States, every State, every territory or possession of the United States, and every Indian tribe shall give full faith and credit to the public acts, records, and judicial proceedings of any Indian tribe applicable to Indian child custody proceedings to the same extent that such entities give full faith and credit to the public acts, records, and judicial proceedings of any other entity.

P.L. 280.[15] With this qualifying language, Congress recognized P.L. 280 as a limitation on exclusive tribal jurisdiction. By contrast, in subsection 1911(b), Congress did not articulate a P.L. 280 exception to tribal transfer jurisdiction. Rather, it provided that "in *any* State court proceeding ... the court, in the absence of good cause to the contrary, *shall* transfer such proceeding to the jurisdiction of the tribe." [16] Subsection 1911(b) therefore authorizes transfer to tribal courts regardless of whether or how P.L. 280 otherwise affects the tribes' jurisdiction.[17]

■ ICWA subsection 1911(b) creates three checks on tribal transfer jurisdiction: State courts should retain jurisdiction if either parent objects to the tribe hearing the case, if the tribe declines jurisdiction, or if the court finds good cause to deny transfer. Congress intended that state courts apply the good cause exception using a "modified doctrine of *forum non conveniens* ... to insure that the rights of the child as an Indian, the Indian parents or custodian, and the tribe are fully protected." [18] The Bureau of Indian Affairs provides further guidelines regarding the good cause exception.[19] These guidelines are not binding, and we have departed from them in the past.[20] Under the guidelines, state courts should deny transfer if the tribe does not have a court as defined by the Act.[21] The guidelines also specify the circumstances in which a state may wish to deny transfer. These include cases in which state proceedings are well advanced before tribes petition for transfer; cases in which a teenaged child who is the subject of the proceedings objects to the transfer; cases in which necessary evidence could not be presented to the tribal court without undue hardship to parties or witnesses; and cases in which a child over five years of age has had little contact with the tribe and the child's parents are unavailable.[22] The guide-

---

**15.** 25 U.S.C. § 1911(a) (emphasis added).

**16.** 25 U.S.C. § 1911(b) (emphasis added). As the United States Supreme Court has noted, ICWA subsection 1911(b) "creates concurrent but *presumptively tribal* jurisdiction" over proceedings involving children not domiciled on reservations. *Mississippi Band of Choctaw Indians v. Holyfield*, 490 U.S. 30, 36, 109 S.Ct. 1597, 104 L.Ed.2d 29 (1989) (emphasis added). By mandating that state courts "shall," absent good cause to deny transfer or objection by a parent or the tribe, transfer jurisdiction to tribal courts, Congress created a strong presumption in favor of transfer. *See* 25 U.S.C. § 1911(b).

**17.** We find the language of section 1911 to be clear. However, if it were ambiguous, the result reached above would still be mandated by the constructive canon that "[c]ourts must resolve ambiguities in statutes affecting the rights of Native Americans in favor of Native Americans." *John v. Baker*, 982 P.2d 738, 752 (Alaska 1999), *cert. denied*, 528 U.S. 1182, 120 S.Ct. 1221, 145 L.Ed.2d 1121 (2000).

**18.** H.R.Rep. No. 95–1386, at 8 (1978), *reprinted in* 1978 U.S.C.C.A.N. 7530, 7544. For discussion of *forum non conveniens* factors, including private interests of the litigants, public interests of the forum state, and the existence of an adequate alternative forum for dispute resolution, see *Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 254 n. 22, 102 S.Ct. 252, 70 L.Ed.2d 419 (1981), and *In re Union Carbide Corp. Gas Plant Disaster at Bhopal, India in Dec., 1984*, 809 F.2d 195 (2d Cir.1987).

**19.** Bureau of Indian Affairs, U.S. Dep't of the Interior, Guidelines for State Courts, Child Custody Proceedings, 44 Fed.Reg. 67,584 (1979).

**20.** *See C.L. v. P.C.S.*, 17 P.3d 769, 776 (Alaska 2001); *In re Adoption of F.H.*, 851 P.2d 1361, 1364 (Alaska 1993).

**21.** *See* 44 Fed.Reg. at 67,591.

**22.** The Bureau of Indian Affairs guidelines provide, in part:

(a) Good cause not to transfer the proceeding exists if the Indian child's tribe does not have a tribal court as defined by the Act to which the case can be transferred.
(b) Good cause not to transfer the proceeding may exist if any of the following circumstances exists:
(i) The proceeding was at an advanced stage when the petition to transfer was received and the petitioner did not file the petition promptly after receiving notice of the hearing.
(ii) The Indian child is over twelve years of age and objects to the transfer.
(iii) The evidence necessary to decide the case could not be adequately presented in the tribal court without undue hardship to the parties or the witnesses.
(iv) The parents of a child over five years of age are not available and the child has had little or no contact with the child's tribe or members of the child's tribe.
44 Fed.Reg. at 67,591.

lines place the burden of establishing good cause to deny transfer jurisdiction on the party opposing the transfer.[23] The good cause exception—like the comity analysis discussed in *John v. Baker*—"is not an invitation for our courts to deny recognition to tribal [courts] based on paternalistic notions of proper procedure.... [S]uperior courts should strive to respect the cultural differences that influence tribal jurisprudence, as well as to recognize the practical limits experienced by smaller court systems." [24]

■ Because the superior court concluded that Nikolai could not claim subsection 1911(b) transfer jurisdiction, it did not carry out an analysis of good cause. On remand, the superior court should inquire whether good cause exists to deny transfer to Nikolai. If no such cause exists, then transfer to the tribal court is appropriate under ICWA subsection 1911(b).

## V. CONCLUSION

We conclude that ICWA subsection 1911(b) authorizes transfer of jurisdiction to tribal courts regardless of P.L. 280. To the extent that *Nenana*,[25] *F.P.*,[26] and *K.E.*[27] are inconsistent with this conclusion, those cases are overruled. We REMAND this case for transfer to the Nikolai tribal court unless the superior court finds good cause to deny transfer.

---

23. "The burden of establishing good cause to the contrary shall be on the party opposing the transfer." 44 Fed.Reg. at 67,591.

24. *John*, 982 P.2d at 763 (internal citation omitted); *see also* BIA guidelines, 44 Fed.Reg. at 67,591 ("Socio-economic conditions and the perceived adequacy of tribal or Bureau of Indian Affairs social services or judicial systems may not be considered in a determination that good cause exists.").

We note that state courts are split on the question whether good cause analysis for denying section 1911 transfer jurisdiction should include substantive considerations of the best interests of the child. Because the facts of this case do not require us to decide this issue, we do not address it. *Compare In re Armell*, 194 Ill.App.3d 31, 141 Ill.Dec. 14, 550 N.E.2d 1060, 1065 (1990) (best interests of child are not relevant to subsection 1911(b) good cause determination), *and Yavapai–Apache Tribe v. Mejia*, 906 S.W.2d 152, 170 (Tex.App.1995) (same), *with In re Appeal in Maricopa County Juvenile Action No. JS–8287*, 171 Ariz. 104, 828 P.2d 1245, 1251 (Ariz. App.1991) (best interests of child are relevant to subsection 1911(b) good cause determination), *and In re Robert T.*, 200 Cal.App.3d 657, 246 Cal.Rptr. 168, 174–75 (1988) (same).

25. *Native Village of Nenana v. State, Dep't of Health & Soc. Servs.*, 722 P.2d 219 (Alaska 1986).

