[No. C049810. Third Dist. Mar. 9, 2006.]

In re M.A., a Person Coming Under the Juvenile Court Law.
SISKIYOU COUNTY HUMAN SERVICES/ADULT AND CHILDREN'S
SERVICES DEPARTMENT, Plaintiff and Appellant, v.
KARUK TRIBE, Intervener and Respondent.

COUNSEL

Frank J. DeMarco, County Counsel, Donald R. Langford, Assistant County Counsel, and Paula L. Baca, Deputy County Counsel, for Plaintiff and Appellant.

Law Office of Stephanie J. Dolan and Stephanie J. Dolan for Intervener and Respondent.

California Indian Legal Services and Jenny Y. Kim for Pala Band of Mission Indians, Pauma Band of Mission Indians, Pechanga Band of Luiseno Indians, and Viejas Band of Kumeyaay Indians as Amici Curiae on behalf of Intervener and Respondent.

OPINION

**SIMS, J.**—Respondent Karuk Tribe of California (the Tribe) filed a petition to transfer this juvenile dependency proceeding from the Siskiyou County Juvenile Court to the Karuk Tribal Court pursuant to the Indian Child Welfare Act (25 U.S.C. § 1901 et seq. (ICWA); undesignated statutory references are to title 25 of the United States Code). The juvenile court issued an order granting the transfer.

On appeal, the Siskiyou County Human Services/Adult and Children's Services Department (Department) contends the Tribe was not entitled to the transfer because its tribal court has not been approved by the Secretary of the United States Department of the Interior (Secretary). Because ICWA does not require the Secretary's approval, we affirm the judgment.

### FACTUAL AND PROCEDURAL BACKGROUND

R.A., the mother of minor M.A., has a history with the Department dating back to 1985. M.A. was born in April 1992. In 1994, he was declared a dependent child of the court. In 1996, he was placed in guardianship with a maternal uncle. In 1998, the mother resumed custody and the guardianship was dismissed.

In June 1999, the present original dependency petition was filed. In 2001, M.A. was placed in guardianship with an extended family member in Sonoma County and the dependency was dismissed.

In April 2004, the mother filed a modification petition seeking termination of the guardianship and placement of the minor with the mother or with tribal relatives in Siskiyou County.

In June 2004, the Karuk Tribe of California, a federally recognized Indian tribe (65 Fed.Reg. 13298), filed notice of intervention in the matter. The juvenile court found that ICWA applies to this case and that the Tribe has standing as an intervening party.

In July 2004, the mother's modification petition was granted to the extent that it awarded her reasonable visitation with the minor.

In December 2004, the guardianship failed and the guardian returned M.A. to the mother's physical custody. In February 2005, the Department filed a modification petition seeking termination of the guardianship, reinstatement of the dependency, and placement of the minor in the mother's home. The Department was awarded temporary custody pending a disposition hearing that was continued to April 25, 2005.

In March 2005, the Karuk Tribal Council (the Tribe's governing body) issued a resolution authorizing transfer of the child custody proceeding from the juvenile court to the Karuk Tribal Court. Following the resolution, the Tribe's Department of Child and Family Services (KCFS) petitioned the Children's Division of the Karuk Tribal Court for an order accepting transfer of this case and awarding temporary custody of M.A. to KCFS. The petition alleged that the minor resided on tribal lands. The chief judge of the tribal court granted the petition.

In April 2005, a KCFS social worker filed a petition in the juvenile court to transfer the case to the Karuk Tribal Court pursuant to ICWA (§ 1911(b)) and rule 1439 of the California Rules of Court. (References to rules are to the California Rules of Court.) The hearing on the petition was set for April 25, 2005, the same day as the Department's modification petition.

The Department filed opposition to the transfer, contending, among other things, that M.A. is not residing on tribal lands and that the Tribe, in establishing its court, did not follow the procedures set forth in ICWA, section 1918. Specifically, the Tribe did not obtain the Secretary's approval to exercise transfer jurisdiction over child custody matters.

The Tribe filed a reply and a supplemental reply to the Department's opposition. At the hearing on the motion, the Department's counsel stated she "couldn't let the transfer occur with[out] the Department's blessing." Counsel believed "that it would put the Department in a position of civil liability should something happen to the child." Following the hearing, the transfer petition was granted.

The Department appeals from the transfer order. The order is appealable as an order after the 2001 final judgment of dismissal of the dependency. (Welf. & Inst. Code, § 395; cf. *In re Larissa G.* (1996) 43 Cal.App.4th 505, 506 [51 Cal.Rptr.2d 16] [appeal from six-month review order directing transfer to tribe].)

## DISCUSSION

The Department contends the Siskiyou Juvenile Court erred in transferring this matter to the Karuk Tribal Court, because the Tribe "did not follow the procedures set forth in the ICWA, . . . § 1918, which ensure that the Tribe has the ability to handle [child custody] cases." For reasons we explain, the procedures of section 1918 do not apply to this case.

"[ICWA], 92 Stat. 3069, . . . §§ 1901–1963, was the product of rising concern in the mid-1970's over the consequences to Indian children, Indian families, and Indian tribes of abusive child welfare practices that resulted in the separation of large numbers of Indian children from their families and tribes through adoption or foster care placement, usually in non-Indian homes." (*Mississippi Band of Choctaw Indians v. Holyfield* (1989) 490 U.S. 30, 32 [104 L.Ed.2d 29, 109 S.Ct. 1597] (*Mississippi Band*).)

Congress was concerned "about the impact on the tribes themselves of the large numbers of Indian children adopted by non-Indians," and about "the detrimental impact on the children themselves of such placements outside their culture." (*Mississippi Band, supra,* 490 U.S. at pp. 49–50.) "Congress was concerned with the rights of Indian families and Indian communities vis-à-vis state authorities"; this "conclusion is inescapable from a reading of the entire statute, the main effect of which is to curtail state authority." (*Id.* at p. 45 & fn. 17.)

■ "At the heart of the ICWA are its provisions concerning jurisdiction over Indian child custody proceedings. Section 1911 lays out a dual jurisdictional scheme. Section 1911(a) establishes exclusive jurisdiction in the tribal courts for proceedings concerning an Indian child 'who resides or is domiciled within the reservation of such tribe,' as well as for wards of tribal courts regardless of domicile." (*Mississippi Band, supra,* 490 U.S. at p. 36; fn. omitted.)[1]

■ For these children, tribal jurisdiction is exclusive of the state, "except where such jurisdiction is otherwise vested in the State by existing Federal law." (§ 1911(a); fn. 1, *ante.*) "This proviso would appear to refer to Pub. L. 280, 67 Stat. 588, as amended, which allows States under certain conditions to assume civil and criminal jurisdiction on the reservations." (*Mississippi Band, supra,* 490 U.S. at p. 42, fn. 16.) Public Law 280 vested concurrent jurisdiction over on-reservation Indians in the courts of certain states, including California. (*Native Village of Venetie I.R.A. Council v. Alaska* (9th Cir. 1991) 944 F.2d 548, 559–561 (*Venetie*), cited with approval in *Doe v. Mann* (9th Cir. 2005) 415 F.3d 1038, 1039, 1063, fn. 32.)

■ "Section 1911(b), on the other hand, creates concurrent but presumptively tribal jurisdiction in the case of children not domiciled on the reservation: on petition of either parent or the tribe, state-court proceedings for foster care placement or termination of parental rights are to be transferred to the tribal court, except in cases of 'good cause,' objection by either parent, or declination of jurisdiction by the tribal court." (*Mississippi Band, supra,* 490 U.S. at p. 36.)[2]

The parties have previously disputed whether M.A. resides on tribal lands. On appeal, the Tribe neither claims that the child resides on tribal lands nor

---

[1] Section 1911(a), provides in full: "Exclusive jurisdiction [¶] An Indian tribe shall have jurisdiction exclusive as to any State over any child custody proceeding involving an Indian child who resides or is domiciled within the reservation of such tribe, except where such jurisdiction is otherwise vested in the State by existing Federal law. Where an Indian child is a ward of a tribal court, the Indian tribe shall retain exclusive jurisdiction, notwithstanding the residence or domicile of the child."

[2] Section 1911(b), provides in full: "Transfer of proceedings; declination by tribal court [¶] In any State court proceeding for the foster care placement of, or termination of parental rights to, an Indian child not domiciled or residing within the reservation of the Indian child's tribe, the court, in the absence of good cause to the contrary, shall transfer such proceeding to the jurisdiction of the tribe, absent objection by either parent, upon the petition of either parent or the Indian custodian or the Indian child's tribe: *Provided,* [t]hat such transfer shall be subject to declination by the tribal court of such tribe."

suggests any other basis for exclusive tribal jurisdiction pursuant to section 1911(a).[3] Thus, the only issue in this case is whether tribal jurisdiction exists under section 1911(b).

It is undisputed that the tribal court did not decline jurisdiction; the tribe petitioned for transfer; neither parent objected (cf. *In re Larissa G., supra,* 43 Cal.App.4th at p. 515 [parent may veto transfer]); and no statutory "good cause" to reject the transfer was shown. Under these circumstances, section 1911(b), and rule 1439(c)(2), which mirrors that statute, required the juvenile court to transfer the case to the tribal court.[4] (See 10 Witkin, Summary of Cal. Law (10th ed. 2005) Parent and Child, § 524, pp. 643–644.)

The Department nevertheless contends the Tribal Court has no jurisdiction because the Tribe has not complied with section 1918. The Alaska Supreme Court rejected this contention in *In re C.R.H.* (Alaska 2001) 29 P.3d 849, holding that "ICWA subsection 1911(b) authorizes transfer of jurisdiction to tribal courts regardless of [Public Law] 280," and thus regardless of whether a tribe complies with section 1918. (*In re C.R.H., supra,* at p. 854.)

In *In re C.R.H., supra,* 29 P.3d 849, the mother's tribe moved to transfer a child custody matter to the tribal court. The State argued in opposition that under the *Nenana* line of cases (*Native Village of Nenana v. Department of Health & Social Servs.* (Alaska 1986) 722 P.2d 219), "Public Law 280 . . . barred [the tribe] from asserting jurisdiction over an ICWA case unless [the tribe] had reassumed jurisdiction to adjudicate ICWA cases under 25 U.S.C. § 1918." (*In re C.R.H., supra,* at p. 851.)

In rejecting the state's argument, the Alaska Supreme Court first explained that "[u]nder [Public Law] 280, Congress extended Alaska state courts' jurisdiction to 'all Indian country' within Alaska. This court interpreted [Public Law] 280 in *Native Village of Nenana,* holding that through that law Congress effectively divested tribal jurisdiction and granted the state 'exclusive jurisdiction over matters involving the custody of Indian children.' State jurisdiction remained exclusive, we held, unless a tribe governed by [Public Law] 280 successfully petitioned to reassume [jurisdiction in] custody [cases] under ICWA section 1918." (*In re C.R.H., supra,* 29 P.3d at pp. 851–852; fns. omitted.)

---

[3] Thus *Doe v. Mann, supra,* 415 F.3d 1038, which involved a child domiciled on an Indian reservation, is not squarely on point in this case. (*Id.* at pp. 1039, 1048.)

[4] Rule 1439(c)(2) provides: "If the Indian child is not domiciled or residing on a reservation that exercises exclusive jurisdiction, the tribe, parent, or Indian custodian may petition the court to transfer the proceedings to the tribal jurisdiction, and the juvenile court must transfer the proceedings to tribal jurisdiction unless there is good cause not to do so. [¶] (A) Either parent may object to the transfer. [¶] (B) The tribe may decline the transfer of the proceedings."

The mother's tribe urged the Alaska Supreme Court to "reconsider *Nenana*'s interpretation of [Public Law] 280, and to hold that the Alaska Native tribes affected by [Public Law] 280 retain jurisdiction concurrent with that of the state." (*In re C.R.H., supra,* 29 P.3d at p. 852.) The court concluded it "need not reach this issue, however, because the jurisdiction claimed by [the mother's tribe] exists regardless of [Public Law] 280: *Subsection 1911(b) tribal transfer jurisdiction over ICWA custody cases was expressly approved by Congress in enacting ICWA.* The language and structure of section 1911 reflect congressional intent that all tribes, regardless of their [Public Law] 280 status, be able to accept transfer jurisdiction of ICWA cases from state courts. We therefore hold that [the mother's tribe] may assume jurisdiction over this case under ICWA's subsection 1911(b) transfer provision." (*Ibid.,* italics added.)

■ The Department acknowledges *In re C.R.H., supra,* 29 P.3d 849, but protests that it did not analyze section 1918 in the course of its holding. Because "statutory language must . . . be construed in the context of the statute as a whole and the overall statutory scheme" (*People v. Rizo* (2000) 22 Cal.4th 681, 685 [94 Cal.Rptr.2d 375, 996 P.2d 27]), we proceed to that analysis.

Section 1918(a) provides: "Petition; suitable plan; approval by Secretary [¶] Any Indian tribe which became subject to State jurisdiction pursuant to the provisions of the Act of August 15, 1953 (67 Stat. 588), as amended by Title IV of the Act of April 11, 1968 (82 Stat. 73, 78) [Public Law 280], or pursuant to any other Federal law, may *reassume jurisdiction over child custody proceedings.* Before any Indian tribe may *reassume jurisdiction over Indian child custody proceedings,* such tribe shall present to the Secretary for approval a petition to reassume such jurisdiction which includes a suitable plan to exercise such jurisdiction." (Italics added.)

As we have noted, Public Law 280 made California tribes "subject to State jurisdiction" within the meaning of section 1918(a), by granting the state *concurrent,* not exclusive, jurisdiction. (*Venetie, supra,* 944 F.2d at pp. 559–561; *Doe v. Mann, supra,* 415 F.3d 1038, 1039, 1063, fn. 32.) Public Law 280 *did not extinguish* the tribes' preexisting jurisdiction.

Read in context, the word "reassume" in the phrase "reassume jurisdiction," allows the tribe to reassume *the exclusive jurisdiction* that it held prior to Public Law 280. (E.g., *People v. Anderson* (2002) 28 Cal.4th 767, 776 [122 Cal.Rptr.2d 587, 50 P.3d 368] [words of statute must be read in context].) As recognized by the Ninth Circuit, "In § 1918, Congress provided tribes in Public Law 280 states the opportunity to obtain *exclusive* jurisdiction by following a detailed procedure." (*Doe v. Mann, supra,* 415 F.3d at p. 1061, italics added.) A tribe's use of that procedure disables the state; it does not

enable the tribe, which was already enabled. Thus, the Tribe's failure to obtain the Secretary's approval does not mean that it lacks jurisdiction to adjudicate a juvenile dependency proceeding or to accept transfer of this case. The Department's argument that the Tribe "inserts the word 'exclusive' into the reassumption provision, but it is not so limited," has no merit.

The Department also relies on section 1918(b)(2), which provides in relevant part: "In those cases where the Secretary determines that the jurisdictional provisions of section 1911(a) . . . are not feasible, he is authorized to accept partial retrocession which will *enable* tribes to exercise referral jurisdiction as provided in [section 1911(b)] . . . ." (Italics added.)[5]

The Department claims, "Congress' use of the word 'enable' indicates a grant of something not otherwise possessed by the tribes." From the provision that partial retrocession "will enable" tribes to exercise referral (transfer) jurisdiction, the Department infers that tribes are *unable* to accept transfers pursuant to section 1911(b), *until* the Secretary *accepts* partial retrocession under section 1918(b)(2).

However, the Secretary can accept partial retrocession only "in those cases" where he or she determines that complete retrocession under section 1911(a), is "not feasible." (§ 1918(b).) Under the Department's reading, a tribe *must* request complete retrocession, which the Secretary *must* consider *and reject*, before the tribe can accept transfers from state courts. Under this view, a tribe that acquiesces in concurrent state jurisdiction of on-reservation cases (and thus never requests complete retrocession) could never obtain transfer of off-reservation cases. Only a tribe that tries but fails to obtain exclusive jurisdiction of on-reservation cases could obtain transfers of off-reservation

---

[5] Section 1918(b) provides: "Criteria applicable to consideration by Secretary; partial retrocession [¶] (1) In considering the petition and feasibility of the plan of a tribe under subsection (a) . . . , the Secretary may consider, among other things: [¶] (i) whether or not the tribe maintains a membership roll or alternative provision for clearly identifying the persons who will be affected by the reassumption of jurisdiction by the tribe; [¶] (ii) the size of the reservation or former reservation area which will be affected by retrocession and reassumption of jurisdiction by the tribe; [¶] (iii) the population base of the tribe, or distribution of the population in homogeneous communities or geographic areas; and [¶] (iv) the feasibility of the plan in cases of multitribal occupation of a single reservation or geographic area. [¶] (2) In those cases where the Secretary determines that the jurisdictional provisions of section [1911(a)] . . . are not feasible, he is authorized to accept partial retrocession which will enable tribes to exercise referral jurisdiction as provided in section [1911(b)] . . . , or, where appropriate, will allow them to exercise exclusive jurisdiction as provided in section [1911(a)] . . . over limited community or geographic areas without regard for the reservation status of the area affected."

cases. Nothing in ICWA compels this absurd result. (See *In re J.W.* (2002) 29 Cal.4th 200, 209 [126 Cal.Rptr.2d 897, 57 P.3d 363].)[6]

. The Department relies on dictum in *Venetie, supra,* 944 F.2d 548, which held that the tribes and the state of Alaska, a Public Law 280 state, had concurrent jurisdiction regarding an adoption matter. (*Venetie, supra,* at pp. 561–562.) The case did not involve a petition to transfer an involuntary child dependency case pursuant to section 1911(b).

The Ninth Circuit stated in *Venetie, supra,* 944 F.2d 548: "The relevant portions of the Indian Child Welfare Act enable the Secretary of the Interior to grant to a tribe, upon receipt of a proper petition, exclusive jurisdiction (over all or a portion of the appropriate 'Indian country') or referral jurisdiction of child-custody proceedings. *See* . . . § 1918(b)(2) (1988). Each of these types of jurisdiction is broader than any tribal jurisdiction which is concurrent with the states. Exclusive jurisdiction, of course, is clearly broader than concurrent jurisdiction. Likewise, referral jurisdiction is broader in scope than concurrent jurisdiction, in that referral jurisdiction is concurrent *but presumptively tribal* jurisdiction. *See id.* § 1911(b). Thus, there is something for a tribe to 'reassume' under section 1918—namely, exclusive or referral jurisdiction—even if Public Law 280 is read as not divesting the tribes of concurrent jurisdiction." (*Venetie, supra,* 944 F.2d at p. 561.)

The Department's reliance on this confusing passage is misplaced. Section 1918 provides a mechanism for tribes to "reassume" the exclusive jurisdiction over on-reservation Indians that they had lost through the enactment of Public Law 280. However, the right to compel transfer of off-reservation cases from state court to tribal court ("transfer" or "referral jurisdiction") had not been lost through prior legislation; rather, it was newly created by ICWA in section 1911(b), which was enacted at the same time as section 1918. (Pub.L. No. 95-608, §§ 101, 108 (Nov. 8, 1978) 92 Stat. 3071, 3074.) Any suggestion that section 1911's newly created transfer provisions are not effective until they are "reassumed" under section 1918 has no merit.

The Department's reliance on a regulation that the Department of Interior, Bureau of Indian Affairs, adopted in 1979 is misplaced. The regulation

---

[6] The House of Representatives Report on section 1918(b)(2), indicates that it was adopted "in order to take into consideration special circumstances, such as those occurring in Alaska and Oklahoma." (H.R.Rep. No. 95-1386, 2d Sess., pp. 24–25 (1978).)

At the hearing on the transfer petition, the Tribe's counsel explained, "A lot of the Alaska tribes, a lot of the Oklahoma tribes—and these are all contemplated in the legislative history—there is some disputes [*sic*] . . . whether or not this is actually a new tribe. [¶] Sometimes consortiums or bands of groups might petition and say we want exclusive jurisdiction over this area, and that's when . . . the Secretary's going to limit jurisdiction."

We find no indication that section 1918(b)(2), was intended to address circumstances that are relevant to California tribes. The Department identifies no such circumstances.

describes the required contents of reassumption petitions. (25 Code Fed. Regs. § 13.11.) In part (a), the regulation requires submission of 12 items of information; in part (b), the regulation requires additional information, "[i]f the petition is for jurisdiction other than transferral jurisdiction under [section] 1911(b)." This regulation makes plain that a petition to "reassume" transfer jurisdiction *may* be filed, but it does not explain *why* such a petition is necessary notwithstanding the clear language of the statute. (See *In re C.R.H., supra,* 29 P.3d at p. 854.)

A related regulation offers a possible explanation: "On some reservations there are disputes concerning whether certain federal statutes have subjected Indian child custody proceedings to state jurisdiction or whether any such jurisdiction conferred on a state is exclusive of tribal jurisdiction. Tribes located on those reservations may wish to exercise exclusive jurisdiction or other jurisdiction currently exercised by the state without the necessity of engaging in protracted litigation. The procedures in this part also permit such tribes to secure unquestioned exclusive, concurrent or partial jurisdiction over Indian child custody matters without relinquishing their claim that no Federal statute had ever deprived them of that jurisdiction." (25 Code Fed. Regs. § 13.1, subd. (b).)

■ Even if the Department of Interior previously believed that a reassumption petition was a prerequisite to a section 1911(b), transfer, it appears that the agency is no longer of that view. We granted the Tribe's motion to take judicial notice of a July 28, 2005, legal opinion by the Department of the Interior, Office of the Field Solicitor. After discussing the *Mississippi Band, supra,* 490 U.S. 30, *Doe, supra,* 415 F.3d 1038, and *C.R.H., supra,* 29 P.3d 849, cases cited *ante,* the Field Solicitor concluded *C.R.H.* was "consistent with the longstanding position of the Office of the Solicitor that a tribe in a Public Law 280 state does not have to submit a petition under § 1918 of the ICWA to reassume transfer jurisdiction under § 1911(b)." We give substantial weight to the Department of Interior's construction of the statutes and regulations under which it operates. (*Colmenares v. Braemar Country Club, Inc.* (2003) 29 Cal.4th 1019, 1029 [130 Cal.Rptr.2d 662, 63 P.3d 220].)

We conclude, in accordance with the decision of the Alaska Supreme Court and consistent with the view of the Department of Interior solicitor, that the Tribe was entitled to the transfer notwithstanding that the Secretary has not approved its tribal court. The juvenile court properly granted the transfer petition.

## DISPOSITION

The judgment (order granting transfer) is affirmed.

Blease, Acting P. J., and Hull, J., concurred.

A petition for a rehearing was denied March 27, 2006, and appellant's petition for review by the Supreme Court was denied June 14, 2006, S142688.